*In re* MARRIAGE OF BARBARA GOCAL, Petitioner-Appellee, and MICHAEL GOCAL, Respondent-Appellant.

First District (4th Division)   No. 1—90—0303

Opinion filed June 27, 1991.

David I. Grund, of Grund, Marcus, McNish, Knabe & Nadler, P.C., of Chicago, for appellant.

222

Jerome Marvin Kaplan, of Batler & Schwartz, of Buffalo Grove, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The respondent, Michael Gocal, appeals from an order of the trial court in which the court created a trust from the respondent's nonmarital property for the support of his child through marriage to the petitioner, Barbara Gocal. Michael questions the authority of the trial court to create the trust and also contends that the court improperly directed that unallocated maintenance and a subsequent award of attorney fees be paid out of the monies earmarked for the trust fund. Michael also argues that Barbara's attorney fees were excessive and raises an issue with respect to his visitation rights.

The parties were married in May of 1982. Barbara Gocal left the marital home in 1984, taking the parties' young son, Matthew, who was born in July of 1983. In September of 1984, an order was entered requiring Michael Gocal to pay temporary child support for Matthew. Michael fell in arrears in his child support payments, and in March of 1988 the parties settled the accumulated arrearage. Michael again fell into arrears for child support due in 1988 and 1989. Although Barbara filed numerous motions concerning the child support, a contempt order was never entered against Michael.

During the marriage, Michael suffered a work-related injury. He filed a personal injury lawsuit, and in 1987 he received a settlement in the amount of approximately $95,000. He spent $45,000 and placed the remaining $50,000 in a mutual fund under his mother's name.

At the time of the proceedings below, Michael had had bouts of manic depressive disorder. He had been hospitalized on occasion for treatment. At the time of the dissolution, Michael's most recent hospitalizations had occurred in August and October of 1989. Michael admitted that if he did not take the medication he had been prescribed, he would require hospitalization. Michael's psychiatrist testified that Michael's prognosis was reasonably good if he continued his treatment.

Barbara testified that during 1982 and 1983, Michael abused alcohol and cocaine. She also testified that Michael had exhibited periods of aggressive behavior with members of his family and had assaulted his aunt. There was no evidence that Michael was aggressive or violent toward his son, Matthew. Like Michael, Mat-

thew had also been diagnosed as a manic depressive. At the time of the proceedings, Matthew was receiving psychiatric treatment.

During 1988 and 1989, Michael enjoyed unsupervised visitation with his son, Matthew. During the pendency of the action below, the court appointed an attorney to represent the interests of Matthew. The court-appointed attorney reported in June of 1989 that in her opinion, Matthew and Michael had a positive relationship and that Matthew was happy with Michael. The attorney recommended that Michael be allowed unsupervised, regular visitation with Matthew. In a subsequent follow-up report, after Michael had suffered a violent episode and been hospitalized, Matthew's attorney recommended that no further visitations be allowed until Michael had stabilized. In her final report in December of 1989, the attorney recommended that the visits between Michael and Matthew be resumed on a supervised basis.

On December 26, 1989, the trial court entered an order dissolving the marriage of Barbara and Michael Gocal. Michael was granted supervised visitation with Matthew for 12 months, after which Michael could petition the court for a modification of the visitation provision. The trial court stated that its intention was to eventually allow Michael to have unsupervised visitation with Matthew.

In determining the property distribution, the trial court specifically found that the $95,000 Michael received in settlement of his personal injury lawsuit was nonmarital property. The court also determined that in spending $45,000 of the settlement sum, Michael had not dissipated marital assets.

The court further ordered Michael to turn over to Barbara's attorney the remaining $50,000 of the settlement proceeds which he had placed in a mutual fund under his mother's name. Pursuant to section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (Marriage and Dissolution Act) (Ill. Rev. Stat. 1987, ch. 40, par. 503(g)), the court directed Barbara's attorney to establish a trust fund and make the following disbursements:

> $20,000 for Matthew's unpaid psychiatric bills;
>
> $2,928 in child support arrearage for the period post-January 1, 1988;
>
> $5,892 in attorney fees to the attorney appointed to represent Matthew's interests;
>
> $15,600 in unallocated support to Barbara and Matthew at the rate of $1,300 per month for 12 months, after which the court upon petition would review the support award.

In January of 1990, Barbara's attorney petitioned the court for payment of attorney fees. The attorney's petition was accompanied by an exhibit summarizing $12,187 worth of hours. In addition, the attorney testified to $3,900 of in-court fees, $662 of court costs, and a payment made to her by Barbara in the amount of $3,000. The court awarded Barbara's attorney the sum of $19,500. Finding Barbara without the means to pay the attorney fees, the trial court, pursuant to section 508 of the Marriage and Dissolution Act, directed that the fee award be paid out of the monies Barbara's attorney was holding pursuant to establishing the trust fund as ordered by the court in the judgment for dissolution. Ill. Rev. Stat. 1987, ch. 40, par. 508.

On appeal, Michael asserts that the trial court improperly invoked the remedial provision of section 503(g) of the Marriage and Dissolution Act in creating a trust for Matthew and Barbara's benefit. Citing to *In re Marriage of Bates* (1986), 141 Ill. App. 3d 566, 490 N.E.2d 1014, Michael argues that the court is without authority to create such a trust absent a finding that the parent has been found in willful contempt of the court's child support order. Further, Michael asserts that the court erred in directing out of the trust funds the disbursements for unallocated maintenance and for Barbara's attorney fees, which he argues are in any case excessive. Michael admits that both the unallocated maintenance and the attorney fees have already been paid out of the trust monies. He seeks reimbursement only for any portion of the attorney fees that are deemed improper.

We do not believe that the trial court improperly invoked section 503(g) of the Marriage and Dissolution Act in creating a trust for the benefit of Michael's son, Matthew. Under section 503(g), "[t]he court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties." Ill. Rev. Stat. 1987, ch. 40, par. 503(g).

Section 503(g) does not require, as a prerequisite to establishing a trust, a finding that the party has been in willful contempt of a court order. Nor do we view *Bates* as establishing this proposition as a rule. The court in *Bates* noted that not only had the respondent not been found in willful contempt, but also that the petitioner's numerous child support petitions were unjustified, a point of distinction from the case at bar. As such, we view the holding in

*Bates* as representing that the lack of a willful contempt order is a factor among other factors that the court may consider in determining whether a trust should be established.

■ We believe that the court in this case could find it necessary to place funds in trust in order to protect the best interests of Matthew. The record is replete with pleadings indicating that Michael was not complying with the support order. Barbara also testified that Michael did not keep up with his support obligations. Further, it is uncontroverted that Michael had settled one child support arrearage with Barbara and was at the time of the trial again in arrears.

We do agree that unallocated maintenance and an award of attorney fees are not proper distributions from a fund set up for the child's benefit under section 503(g). (See generally *In re Marriage of Clarke* (1984), 125 Ill. App. 3d 432, 465 N.E.2d 975.) Section 503(g) speaks specifically and exclusively to the needs of the child. As Michael has asked for no relief with respect to the unallocated maintenance, no action is required.

■ With respect to Barbara's attorney fees, Michael has requested that any excessive or inappropriate fees be reimbursed. In asserting that Barbara's attorney fees were excessive, Michael argues that the fees were both unjustified and unsupported by the evidence. Michael points out that although Barbara's attorney petitioned for fees in the amount of $19,500, the affidavit attached to her petition supports only $12,187 worth of out-of-court fees. This amount, together with $3,900 of in-court fees, $662 in costs, and less a $3,000 payment made by Barbara to her attorney, totals $13,750. This is the sum for which the attorney has presented evidentiary support. Accordingly, we reduce the attorney fee award to $13,750. 107 Ill. 2d R. 366(a)(5).

■ Finally, Michael argues that in ordering supervised visitation for 12 months, the court improperly limited his visitation with Matthew. We disagree. The disposition of matters of child custody rests largely in the discretion of the trial court. (*In re Marriage of Johnson* (1981), 100 Ill. App. 3d 767, 427 N.E.2d 374.) At the time that the trial court ordered that Michael be temporarily restricted to supervised visitation with Matthew, Michael had twice in the recent past undergone hospitalization for manic episodes. There was evidence from Barbara and Michael's psychiatrist that when Michael suffered manic episodes, he became aggressive and out of control. Further, the child's attorney recommended that Michael's visitation with Matthew be supervised temporarily. The court provided for a

reevaluation of Michael's visitation rights after 12 months. Under these circumstances, we do not believe the trial court abused its discretion in temporarily limiting Michael's visitation. For these reasons, the trial court's ruling is affirmed as modified and the case is remanded for an order consistent with this opinion.

Affirmed as modified and remanded.

JOHNSON and LINN, JJ., concur.