1-98-4078) FOURTH DIVISION

1-99-0228) FEBRUARY 1, 2001

1-99-0380)

1-99-0470) 

1-99-0473)

1-99-3086) Cons.

IN RE THE MARRIAGE OF: ) Appeal from the

) Circuit Court of 

KEVIN PETERSEN, ) Cook County.

)

Petitioner-Appellant, )   

)

and ) Honorable       

) Helaine L. Berger,

JANET KELLOGG PETERSEN, ) Grace G. Dickler,

) Moshe Jacobius, and

Respondent-Appellee. ) Karen Shields,       

) Judges Presiding.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

This consolidated appeal arises from the dissolution of the marriage of petitioner Kevin Petersen and respondent Janet Kellogg Petersen and involves five interlocutory appeals as well as an appeal from the judgment of dissolution.  On appeal Kevin contends that the circuit court erred in: 
(1) finding him in indirect civil contempt of court on three separate occasions; (2)  finding him in contempt of court for his failure to pay expert witness fees pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/604(b) (West 1998) (section 604(b))); (3) denying his petition for a preliminary injunction; (4) granting Janet's petition for a preliminary injunction; (5) denying Kevin's  multiple motions for substitution of judge; (6) awarding Janet maintenance; and (7) imposing a trust under section 503(g) of the Act (750 ILCS 5/503(g) (West 1998)).  He also asks this court to reconsider its denial of his motion to vacate the circuit court's November 18, 1998 order.

Kevin and Janet were married on September 1, 1983, in Santa Monica, California.  The parties have three children.  Kevin is  a self-employed general surgeon at Petersen Surgical Services.  The parties separated in June 1996, when Kevin filed a petition for dissolution of marriage.  On July 5, 1996, Janet filed a counter-petition for dissolution of marriage.  After attempts at reconciliation, Kevin withdrew his petition.  Janet's counter-petition remained.

On July 11, 1996, the parties entered into an agreed order which granted temporary custody of the children to Janet and required Kevin to pay Janet $12,000 per month ($6,000 on the first and $6,000 on the fifteenth of each month) in temporary child support.  Kevin provided extra money to Janet as needed, averaging $2,000 per month. 

 On October 7, 1998, Janet filed an emergency petition for a rule to show cause alleging Kevin wilfully and contumaciously failed to pay the court ordered child support due on September 15  and October 1, 1998, totaling $12,000.

On October 15, 1998, Kevin filed a motion for immediate hearing on the issue of support, claiming that since the entry of the agreed order in July 1996, his income has "decreased dramatically" so that he could no longer afford the $12,000 per month support payments.

On October 23, 1998, a hearing was held on Janet's petition for a rule to show cause.  Janet testified that Kevin failed to make the September 15 and October 1, 1998, support payments; she received $6,000 from him on October 8, 1998, but no payments since that date; and Kevin was $12,000 in arrears at the time of the hearing.  Kevin testified he did not have the funds to make the payments due to a significant decrease in his income since 1996.  Kevin's evidence of his inability to pay consisted of his testimony and self-created summary financial statements.  He admitted that in the time the arrearage accrued he received a $70,000 loan from his aunt from which he paid a $25,000 retainer to his attorneys, paid off $14,000 in personal credit card debt, and bought a $3,000 lap top computer and a $1,000 digital camera.  Following the hearing, the court held Kevin in indirect civil contempt for failure to pay the $12,000 child support due October 1 and October 15, 1998.  On October 29, 1998, the court ordered Kevin's incarceration until he purged the $12,000 debt.  Kevin's request for a stay of the order pending an emergency appeal to this court was denied and Kevin was incarcerated.  His request to set bail was denied.

On October 29, 1998, Kevin filed a notice of appeal from the circuit court's order finding him in contempt and on October 30, 1998, this court stayed the order of commitment pending appeal.  Prior to the stay order, Kevin paid  $12,000 to the sheriff and was released from jail.  On November 16, 1998, Janet filed an emergency motion seeking the $12,000 posted with the sheriff by Kevin to secure his release from jail.  A hearing was held on November 18, 1998, after which the circuit court granted Janet's motion, finding that the October 29, 1998 order set the $12,000 as a purge amount, rather than a bond.  On November 19, 1998, Kevin filed an emergency motion with this court to vacate the circuit court's November 18, 1998 order, which was denied. 

On September 16, 1998, the circuit court entered an order appointing Dr. Rochelle Miller to conduct a custody evaluation, pursuant to section 604(b) and Barry Greenberg to represent the parties' minor children.  The order further required Kevin to pay the retainers required by Dr. Miller and Greenberg within ten days.  On October 28, 1998, Greenberg filed a petition for a rule to show cause, alleging Kevin had not paid his $5,000 retainer required by the court's September 16, 1998 order.  On November 17, 1998, Kevin filed a response stating "he does not possess the money to pay the GAL and to pay all of his other bills which are due and owing."  On November 18, 1998, Greenberg filed a second petition for a rule to show cause against Kevin alleging his failure to pay the second half of Dr. Miller's retainer ($2,850).
(footnote: 1)  

After a three day hearing, the circuit court entered an order on December 14, 1998, finding Kevin in indirect civil contempt for failure to pay the section 604(b) expert witness fees and for failure to pay the GAL's fees.  The court allowed the provisions of the July 11, 1996, support agreement to stand.  Kevin's motion to reconsider the court's order was denied.  On January 19, 1999, the court found Kevin in wilful contempt and ordered him incarcerated for failing to pay the 604(b) expert witness fees.  This court stayed the commitment order upon posting of an appeal bond in the amount of $4,275.  On that same day Kevin filed a notice of appeal from the January 19, 1999 order.

On January 11, 1999, Kevin filed an emergency motion for a temporary restraining order (TRO) and preliminary injunction thereafter, when he learned Janet had made plans to take the parties' children to California to visit Kevin's father Andro Petersen, from whom Kevin was estranged.  The circuit court entered a TRO enjoining Janet from exposing the children without her presence to any visitation with Andro where they might be exposed to his guns.   

On January 29, 1999, the circuit court again found Kevin in indirect civil contempt for failure to pay $16,000 in past due child support and ordered him committed to the custody of the Cook County Sheriff until he purged the contempt by paying Janet $16,000.  The court also ordered that Kevin, having been held in contempt of court on December 14, 1999, for failure to pay the GAL and failure to purge the contempt, be committed to the custody of the Cook County Sheriff until he purged the contempt by paying the GAL $5,000.  On January 29, 1999, Kevin filed his notice of appeal from that order and this court stayed the circuit court's order pending appeal. 

On February 2, 1999, a hearing was held on Kevin's motion to elevate the TRO to a preliminary injunction.  Kevin offered no new evidence, relying on the testimony presented at the TRO hearing.  Janet moved for a finding arguing the evidence previously presented for the TRO was insufficient for a preliminary injunction.  The circuit court denied Janet's motion for a finding and denied Kevin's petition for a preliminary injunction.  On February 5, 1999, Kevin filed an amended notice of interlocutory appeal, appealing from the denial of his petition for a preliminary injunction. 

On February 8, 1999, the circuit court entered a preliminary injunction on Janet's motion, enjoining Kevin from withdrawing funds from the parties' retirement accounts, which were solely in his name, throughout the pendency of this cause.
(footnote: 2)  On February 9, 1999, Kevin filed a notice of interlocutory appeal from the February 8 order. 

The case was assigned to Judge Helaine L. Berger for trial.  On May 10, 1999, Kevin moved for substitution of judge as of right under section 2-1001 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-1001 (West 1998)).  Judge Berger found her prior rulings in the case made on February 4, 1999, to be substantive in nature and denied Kevin's motion.

On May 13, 1999, Kevin filed a two-count emergency petition for recusal and other relief.  He alleged that on May 10 and 11, 1999, Judge Berger conducted a pre-trial settlement conference regarding the issues of custody and visitation, meeting with the attorneys and the parties separately and together at various times throughout the two days.  On May 11, 1999, the parties settled the custody and visitation issues.  Thereafter, Kevin disclosed several comments allegedly made to him by Judge Berger in the presence of Janet, which he claimed expressed a personal bias or prejudice against him, necessitating her recusal under Supreme Court Rule 63 (155 Ill. 2d R. 63) (count I) and/or her substitution for cause under section 2-1001(a)(3) of the Code (735 ILCS 5/2-1001(a)(3) (West 1998)) (count II).  Judge Berger denied count I and transferred count II to Judge Grace G. Dickler for further proceedings.  Judge Dickler transferred the matter to Judge Timothy Evans, the presiding judge of the domestic relations division, who assigned the matter for hearing to Judge Moshe Jacobius, sitting in the domestic relations division.

Janet filed a two count motion to dismiss under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 1998)).  On May 14, 1999, Judge Jacobius entered a memorandum opinion and order dismissing count II of Kevin's petition under section 2-615 of the Code (735 ILCS 5/2-615 (West 1998)), without specifically granting him leave to replead.  The case was sent back to Judge Berger for trial.  Following the trial, a dissolution of marriage judgment was entered on August 27, 1999. 

I

In docket numbers 1-98-4078 and 1-99-0380 Kevin appeals from the circuit court's October 29, 1998, and January 29, 1999, orders finding him in contempt of court for non-payment of support and the guardian ad litem's fees.  He contends his failure to pay was not wilful because he did not have the funds with which to make the payments.  

Our supreme court has held that "[t]he power to enforce an order to pay money through contempt is limited to cases of wilful refusal to obey the court's order."  
In re Marriage of Logston
, 103 Ill. 2d 266, 285, 469 N.E.2d 167 (1984) (
Logston
).  The failure to pay court ordered support or fees is 
prima
 
facie
 evidence of indirect civil contempt, shifting the burden to the alleged contemnor to show that his noncompliance was not wilful.   
Logston
, 103 Ill. 2d at 285.  Whether noncompliance is wilful or the alleged contemnor had a valid excuse for noncompliance is a question of fact and the finding of the circuit court will not be disturbed unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion.  
Logston
, 103 Ill. 2d at 287.  

A defense to contempt exists where the failure to obey an order to pay is due to poverty, insolvency, or other misfortune, unless that inability to pay is the result of a wrongful or illegal act.  
In re Marriage of Betts
, 155 Ill. App. 3d 85, 507 N.E.2d 912 (1987) (
Betts
).  To prove this defense, a defendant must show he neither has money now with which to pay, nor has he wrongfully disposed of money or assets with which he might have paid.  
Logston
, 103 Ill. 2d at 285.  Financial inability to comply with an order must be shown by definite and explicit evidence.  
In re Marriage of Chenoweth
, 134 Ill. App. 3d 1015, 481 N.E.2d 765 (1985) (
Chenoweth
).  The alleged contemnor must show, with reasonable certainty, the amount of money he has received since the order was made and that it has been disbursed in the payment of expenses which, under the law, he should pay before making any payment for support.  
Chenoweth
, 134 Ill. App. 3d at 1019.

Kevin argues his inability to pay is the result of a "downturn" in his practice.  He relies on 
In re Marriage of Lavelle
, 206 Ill. App. 3d 607, 565 N.E.2d 291 (1990) (
Lavelle
), where the court found that a father's nonpayment of support was not wilful and contumacious, but rather due to lack of sufficient income.  In 
Lavelle
, the father's stereo store went bankrupt and his future income was unknown and unprojectable.  

Here, Kevin is a practicing surgeon whose medical practice grossed $360,000 in 1998.  Moreover, Kevin admitted that during the period the arrearage accumulated he spent $25,000 for his attorney's retainer, $1,000 on a digital camera, $3,000 on a lap top computer, paid off $14,000 in personal credit card debt, and paid a discretionary employee bonus of $5,000.  Kevin did not show with definite and explicit evidence that he was unable to comply with the court's orders (
Chenoweth
), where he had funds available to pay the court ordered support and fees, but chose not to do so.

The circuit court's orders holding Kevin in indirect civil contempt were not against the manifest weight of the evidence.

II

In docket number 1-99-0228, Kevin argues that the circuit court erred as a matter of law in finding him in contempt of court for non-payment of the section 604(b) expert witness fees, which the court was without legal authority to order. 

Section 604(b) provides:

"The court may seek the advice of professional personnel, whether or not employed by the court on a regular basis.  The advice given shall be in writing and made available by the court to counsel.  Counsel may examine, as a witness, any professional personnel consulted by the court, designated as a court's witness." 750 ILCS 5/604(b) (West 1998).

Kevin correctly notes that section 604 contains no express statutory authority to require a matrimonial litigant to pay for a 604(b) expert witness.  Generally, attorney's fees and costs of litigation are not awarded in the absence of statutory authority; however, this rule is not inflexible.  
Zalduendo v. Zalduendo
, 45 Ill. App. 3d 849, 360 N.E.2d 386 (1977).  Courts have inherent plenary power not only to protect the interests of minors, but have a duty to do so.  
City of Chicago v. Chicago Board of Education
, 277 Ill. App. 3d 250, 660 N.E.2d 74 (1995).  In matters regarding child custody, courts have the inherent power to enter orders that are necessary for the benefit of the child, including orders assessing fees.  
Matter of Azevedo's Estate
, 115 Ill. App. 3d 260, 450 N.E.2d 423 (1983) (
Azevedo's Estate
);
(footnote: 3) 
In re Adoption of Kindgren
, 184 Ill. App. 3d 661, 540 N.E.2d 485 (1989) (
Kindgren
).
(footnote: 4)
 In the present case, the section 604(b) expert witness, although designated a court's witness, was appointed for the ultimate benefit of the minor children and was necessary to protect the interests of the minor children regarding issues of custody and visitation.  As in 
Kindgren
 and 
Azevedo's Estate
, it was within the circuit court's inherent plenary powers to enter orders necessary for the benefit of the minor children, including the order requiring Kevin to pay the section 604(b) expert witness fees.  The court did not err in holding Kevin in contempt of court for failure to pay those fees. 

III

In docket number 1-99-0470, Kevin appeals from the circuit court's February 2, 1999 order denying his motion for a preliminary injunction.  Kevin argues that by denying Janet's motion for a finding the court implicitly found that he had put forth a 
prima
 
facie
 case and, as a matter of law, was required to enter the injunction because Janet failed to present any evidence rebutting Kevin's 
prima
 
facie
 case.

This issue is moot.  A reviewing court will decide only actual controversies in which the interests or rights of the parties can be granted effectual relief.  
Dixon v. Chicago & North Western Transportation Co.
, 151 Ill. 2d 108, 601 N.E.2d 704 (1992).  An appeal becomes moot when a court can no longer effect the relief originally sought by an appellant or when the substantial question involved in the trial court no longer exists.  
HealthChicago, Inc. v. Touche, Ross & Co.
, 252 Ill. App. 3d 608, 625 N.E.2d 706 (1993).  When a case is moot, a court's decision on the merits cannot afford either party relief and any decision is merely an advisory opinion.  
In re Marriage of Landfield
, 118 Ill. 2d 229, 514 N.E.2d 1005 (1987).  

In the case 
sub
 
judice
, the parties settled the issues of custody and visitation by agreement on May 11, 1999.  A custody and visitation order was incorporated into the judgment of dissolution entered August 27, 1999, whereby Janet has sole custody and sole decision-making power with respect to the children.  A preliminary injunction is provisional in nature, meant only to preserve the status quo pending a decision on the merits of the cause.  
Postma v. Jack Brown Buick
, 157 Ill. 2d 391, 626 N.E.2d 199 (1993) (
Postma
).  Any preliminary injunction entered with respect to visitation with Andro Petersen would have been dissolved by the entry of the judgment of dissolution of marriage.  Kevin did not seek a permanent injunction preventing Janet from allowing the children to visit Andro.  Any judgment on this issue would have had no practical legal effect on any existing controversy.  Consequently, appeal number 1-99-0470 is dismissed as moot.  

IV

In docket number 1-99-0473, Kevin appeals from the court's February 8, 1999, order granting Janet's petition for a preliminary injunction, enjoining him from withdrawing funds from the parties retirement accounts, which were solely in his name.
(footnote: 5)  
He contends Janet had no clearly ascertainable right in need of protection, there was no irreparable harm because he conceded from the outset that the money would be treated as an advance against his share of the marital estate, and Janet had an adequate remedy at law for any depletion of the marital estate under section 503(d) of the Act (750 ILCS 5/503(d) (West 1998)).

Janet responds that she proved each of the necessary elements by a preponderance of the evidence and established that a preliminary injunction was necessary to maintain the status quo during the pendency of the divorce action.  Janet claimed she had an ascertainable right to protect the property held by the parties from dissipation during the dissolution proceedings.  The withdrawal of the funds would decrease their value irreparably and substantially as they would be subject to taxes and penalties.  She had no other adequate remedy at law to prevent the dissipation and maintain the status quo.  Finally, she claimed a likelihood of success on the merits because the retirement accounts were acquired during the marriage and likely would be determined part of the marital estate.

The purpose of a preliminary injunction is to preserve the status quo until the case can be decided on the merits; "[t]he status quo to be preserved by a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy."  
Postma
, 157 Ill. 2d at 397.  To justify entry of a preliminary injunction, the moving party carries the burden of persuasion on four issues:  (1) he or she possesses a clearly ascertainable right which needs  protection; (2) he or she will suffer irreparable injury without the injunction; (3) there is no adequate remedy at law for his or her injury; and (4) a likelihood of success on the merits exists.  
In re Marriage of Rayfield
, 221 Ill. App. 3d 763, 583 N.E.2d 23 (1991).  The grant or denial of a preliminary injunction is within the discretion of the circuit court and its decision will not be disturbed absent its abuse.  
Shodeen v. Chicago Title & Trust Co.
, 162 Ill. App. 3d 667, 515 N.E.2d 1339 (1987).

Relying upon 
In re Marriage of Schwartz
, 131 Ill. App. 3d 351, 475 N.E.2d 1077 (1985) (
Schwartz
), Kevin argues that Janet had no clearly ascertainable right in need of protection.
(footnote: 6)  
Schwartz
 is distinguishable from the present case.  In 
Schwartz
 there was no threat of dissipation or destruction of the condominium merely from its use.  The parties had entered into an agreed order restraining and enjoining both parties from disposing of or damaging any mutual property.  In contrast, the present case posed a threat of dissipation, with Kevin having directed investments in the parties' retirement accounts to be liquidated and his announced intention to withdraw those funds.  The "status quo" to be maintained by a preliminary injunction here was the prevention of dissipation or destruction of the property in question.  
Gannett Outdoor of Chicago v. Baise
, 163 Ill. App. 3d 717, 516 N.E.2d 915 (1987); 
In re Marriage of Joerger
, 221 Ill. App. 3d 400, 581 N.E.2d 1219 (1991).  The circuit court did not err in granting Janet's petition for a preliminary injunction.        

V 

In docket number 1-99-3086, Kevin appeals from the circuit court's denial of his multiple motions for substitution of judge.  

A

Kevin contends that the circuit court committed reversible error in denying his motion for substitution of judge as of right, rendering its subsequent orders and judgement void.  See 
Stoller v. Paul Revere Life Insurance Co.
, 163 Ill. App. 3d 438, 517 N.E.2d 5 (1987) (
Stoller
).  Prior to the filing of his motion, Kevin argues, Judge Berger ruled only on discovery issues and therefore entered no substantial rulings precluding a substitution of judge as of right.  Janet counters that Judge Berger's February 4, 1999, rulings were substantive in nature and that Kevin's motion was a device only to delay trial.
(footnote: 7)
 Civil litigants are entitled to one substitution of judge without cause as a matter of right.  A court must grant a party's motion for substitution of judge as of right "if [the motion] is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case."  735 ILCS 5/2-1001(a)(2)(i) (West 1998).  A petition for substitution of judge must be brought at the earliest practical moment in order to prevent a litigant from seeking a change of judge only after he has formed an opinion that the judge may be unfavorably disposed toward his cause.  
In re Marriage of Abma
, 308 Ill. App. 3d 605, 720 N.E.2d 645 (1999) (
Abma
).  A party is not free to "judge shop" until he finds a jurist who is favorably disposed to his cause of action.  
Birt
, 157 Ill. App. 3d at 367
.

Whether there was a ruling on a substantial issue in the case presents a question of law, to which a 
de
 
novo
 standard of review applies.  
Rodisch v. Commacho-Esparza
, 309 Ill. App. 3d 346, 722 N.E.2d 326 (1999).  Rulings directly related to the merits of the case are considered substantial.  
Bonnie Owen Realty v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 812, 670 N.E.2d 1182 (1996).  Even when the court has not ruled on a substantial issue, the motion may be denied if the movant had an opportunity to test the waters and form an opinion as to the court's reaction to his claim.  
In re Marriage of Roach
, 245 Ill. App. 3d 742, 615 N.E.2d 30 (1993) (
Roach
).
(footnote: 8)
 The present case was assigned to Judge Berger on February 4, 1999, for hearing on several pending motions: (1) the attorney for the children's motion to quash Kevin's subpoena to take his deposition; (2) Janet's motion for issuance of a subpoena to Citibank; (3) Janet's motion to quash Kevin's subpoena for the deposition of Reverend Martha Greene; (4) Janet's motion to strike Kevin's motion for a Supreme Court Rule 215(a) (166 Ill. 2d R. 215(a)) mental health examination, and (5) Kevin's motion to strike Janet's petition for sanctions pursuant to Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)).  In ruling on the two motions to quash, Judge Berger considered and determined the relevance  of the potential evidence to be adduced by taking the depositions of the children's attorney and Rev. Greene, as well as issues of privilege and admissibility of such evidence.  Judge Berger's rulings were not merely preliminary, administrative or preparatory for trial, but went to the admissibility and relevance of material information.  Therefore, Kevin's motion for substitution of judge as of right was properly denied.   

B

Kevin next contends the circuit court erred in dismissing count II of his petition for recusal and substitution of judge for cause.  Count II was dismissed pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 1998)) and therefore the standard of review is 
de
 
novo
.  Here, the issue is whether the pleading, when viewed in the light most favorable to the movant, alleges facts sufficient to establish a cause of action for which relief may be granted; all well pleaded facts must be accepted as true.  
Harris v. Chicago Housing Authority
, 235 Ill. App. 3d 276, 601 N.E.2d 1011 (1992).

Section 2-1001(a)(3) of the Code (735 ILCS 5/2-1001(a)(3) (West 1998)), provides for a substitution of judge for cause.
(footnote: 9)  A trial judge is presumed to be impartial and the burden of overcoming this presumption rests on the party making the charge of prejudice, who must present evidence of personal bias stemming from an extra-judicial source and evidence of prejudicial trial conduct.  
Hartnett v. Stack
, 241 Ill. App. 3d 157, 607 N.E.2d 703 (1993).  Proving prejudice so as to justify a substitution for cause is a heavy burden and the conclusion of prejudice will not be made lightly.  
Dayan v. McDonald's Corp.
, 138 Ill. App. 3d 367, 485 N.E.2d 1188 (1985).  The United States Supreme Court has articulated the standard to apply in disqualifying a judge on the basis of bias or prejudice:

"opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  
Liteky v. United States
, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).

The foregoing footnoted comments were made prior to a stipulation that no evidence would be taken in the pre-trial conference and matters discussed therein would be for settlement purposes only.  There was no indication in the record that once the trial began, Judge Berger would not base her rulings solely on the evidence adduced at trial.  As for the statement that Kevin "ignored" other judges' orders, it merely indicates that Kevin has failed to comply with prior court orders, a fact he does not contest.  There was no showing that the comments stemmed from an extra-judicial source.  The pre-trial conference was held after Janet's opening statement.  The attorneys met with Judge Berger first to preview the facts and issues in the case.  The comments attributed to Judge Berger reveal a forthright confrontation by the judge of the issues emerging from the discussions, rather than bias.  Count II of Kevin's motion was properly dismissed.
(footnote: 10)  

Kevin further argues that it was error not to allow him to replead in light of the policy of liberally construing substitution petitions.  Judge Jacobius' opinion was silent on the issue of repleading.  No attempt by Kevin to file an amended motion for substitution of judge for cause appears in the record.  

VI

Also in docket number 1-99-3086, Kevin appeals from the circuit court's award of maintenance to Janet in the amount of $4,400 per month, to be reviewed no earlier than August 1, 2002. 

In deciding whether to award maintenance the circuit court must consider relevant statutory factors, including:  (1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance; (2) the needs of each party; (3) the present and future earning capacity of each party; (4) any impairment of the present or future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage; (5) the standard of living established during the marriage; and (6) the duration of the marriage.  750 ILCS 5/504(a) (West 1998).  A court's determination of maintenance will not be disturbed on appeal absent an abuse of discretion.  
In re Marriage of Gurda
, 304 Ill. App. 3d 1019, 711 N.E.2d 339 (1999).  

Kevin argues that Janet should be barred from receiving maintenance because she failed to seek or find suitable employment during the pendency of the case.  Kevin points to the fact that Janet worked only four or five days from October 1998 through the trial; a fact which the court ignored, focusing only on maintaining her standard of living.  

There is an affirmative obligation on the party requesting maintenance to seek appropriate employment and to make a good-faith effort to become financially independent.  
In re Marriage of Courtright
, 185 Ill. App. 3d 74, 540 N.E.2d 1027 (1989) (
Courtright
); 
In re Marriage of Callaway
, 150 Ill. App. 3d 712, 502 N.E.2d 366 (1986); 
In re Marriage of Mittra
, 114 Ill. App. 3d 627, 450 N.E.2d 1229 (1983). These cases do not hold, however, that failure to seek employment during the pendency of the litigation automatically bars an award of maintenance.

In the instant case, Janet testified that in the middle of 1996 she was employed one day per week by the Hospice of the North Shore, a schedule she continued until October 1998, when she could no longer commit to one day per week due to the intensive litigation schedule, and went to a more open schedule.  Since October 1998 she worked only four or five days.  As the court noted, the litigation was at an end and would no longer hamper either parties' ability to work.  Moreover, Janet testified that she had a job at Palliative Care Center of the North Shore as a nursing assessor, which she would begin once the trial was over.  

Financial independence does not mean the ability to merely meet one's minimum requirements, but entails the ability to earn an income which will provide a standard of living similar to that enjoyed during the marriage.  
Courtright
, 185 Ill. App. 3d at 77.  When a former spouse has a grossly disparate earning potential, the goal of financial independence may not be achievable because of the dependent former spouse's inability to maintain the standard of living shared during the marriage.  
In re Marriage of Charles
, 284 Ill. App. 3d 339, 672 N.E.2d 57 (1996).

In the present case, the circuit court, after considering the relevant  factors, found that Janet needed maintenance to maintain the standard of living established during the marriage; she is employable only at a low income level as compared to the previous standard of living; the resources of the parties are sufficient to maintain the standard of living; and Kevin has great future earning capacity.

The record supports these findings.  According to Janet's vocational expert, Janet has an earning capacity of $35-36,000 per year as a full time nurse.  Moreover, Janet was not awarded any income producing property to assist her.  Kevin's gross income in 1998 was $202,662 plus an additional $75,000 in loans and gifts from family members.  Kevin's future earning capacity is high, as he was awarded his surgical practice. 

The court did not abuse its discretion in awarding maintenance to Janet.    VII

Finally, in docket number 1-99-3086, Kevin appeals from the circuit court's establishment of a trust pursuant to section 503(g) of the Act (750 ILCS 5/503(g) (West 1998)).  Section 503(g) allows the court to establish a trust for minors:

"The court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties."  750 ILCS 5/503(g) (West 1998).

The supreme court examined this portion of the Act, and found  imposition of such a trust "inappropriate in the absence of evidence showing some need to protect the interests of the children."  
Atkinson v. Atkinson
, 87 Ill. 2d 174, 179, 429 N.E.2d 465 (1981) (the court examined section 503(d) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(d)), which is now codified as 750 ILCS 5/503(g) (West 1998)).  A need for such protection arises when the obligor spouse is either unwilling or unable to make child support payments.  
In re Marriage of Steffen
, 253 Ill. App. 3d 966, 625 N.E.2d 864 (1993) (
Steffen
).  In the present case Kevin has demonstrated such an unwillingness.  Here, Kevin was held in wilful contempt of court twice in three months for failure to pay child support.  See 
Rochford v. Laser
, 91 Ill. App. 3d 769, 414 N.E.2d 1096 (1980) (demonstrated unwillingness to pay child support determined where father was found in wilful contempt of court three times for failure to pay child support).  At the time of the dissolution judgment in the case 
sub
 
judice
 there was a  support arrearage in the amount of $54,000.  See 
Steffen
, 253 Ill. App. 3d at 970 (the existence of a substantial arrearage by the obligor spouse is a sufficient showing of an unwillingness or inability to pay child support); 
In re Marriage of Gocal
, 216 Ill. App. 3d 221, 576 N.E.2d 946 (1991) (same).  The evidence demonstrates that Kevin elected to pay attorney's fees, discretionary employee bonuses and bought computers and digital cameras without having paid his child support obligation.   The circuit court did not abuse its discretion in establishing a section 503(g) trust.
      

VIII

Finally, Kevin asks this court to reconsider its denial of his motion to vacate the circuit court's November 18, 1998 order.  By that order the court turned over to Janet the $12,000 in past due child support that Kevin paid to secure his release from jail.  According to Kevin, the court lacked jurisdiction to enter the order because he had filed a notice of appeal from the court's order finding him in contempt of court.  He further argues that the court's November 18, 1998 order is in direct conflict with this court's October 30, 1998 stay of the commitment order. 

The $12,000 paid by Kevin to secure his release from jail was a purge of contempt and consisted of past due child support.  The record is clear that the court specifically denied Kevin's request to set bail.  The order of commitment states "[i]t is ordered that the sheriff take and keep custody of Dr. Kevin C. Petersen until such time as he purges said contempt by paying the amount of $12,000 in past due child support."  There was no stay in effect prohibiting enforcement of the underlying child support judgment against Kevin.  Section 413(a) of the Act provides in pertinent part: "[a]n order directing payment of money for support or maintenance of the spouse or the minor child or children shall not be suspended or the enforcement thereof stayed pending appeal."  750 ILCS 5/413(a) (West 1998).  Kevin's motion to vacate the circuit court's November 18, 1998 order was properly denied by this court.      

Accordingly, the judgment of the circuit court is affirmed in part and appeal number 1-99-0470 is dismissed as moot.

Affirmed in part and dismissed in part.

HOFFMAN and SOUTH, JJ., concur.

FOOTNOTES
1:
Kevin filed a motion to modify the order of September 16, 1998, requiring him to pay Dr. Miller, arguing that the court was without authority to assess 604(b) fees against a litigant.

2:
On January 29, 1999, Janet filed an emergency petition for entry of a temporary restraining order alleging Kevin had ordered all investments in the retirement accounts to be liquidated and that he told the broker he intended to withdraw the funds from the retirement accounts.  These accounts represent the parties' only retirement savings and the withdrawal of these funds would result in significant penalties.   

3:
In 
Azevedo's Estate
, the appellate court held that the circuit court's order requiring the father to pay a portion of the fees for the minor child's court appointed attorney was justified as an incident of its inherent power in child custody matters.  Moreover, the circuit court could require the father to pay for the minor's attorney's fees to prosecute the pending appeal pursuant to its inherent power to make orders that are necessary for the benefit of the child.  

4:
In 
Kindgren
, the appellate court recognized that the circuit court had no express statutory authority to award the fees to the GAL, but had the inherent power to award fees to a GAL in a child custody proceeding.  The court held that because the appointment of the GAL was necessary to protect the interests of the minor child, it was well within the equitable powers of the circuit court to ensure the guardian received reasonable compensation. 

5:
Although the preliminary injunction was terminated by the dissolution proceeding, unlike the visitation issue considered under point III, this appeal is not moot because if injunctive relief has been improperly granted, the injured party, after demonstrating the invalidity of the order, may seek damages for injuries accrued during the injunctive period.  
In re Marriage of Grauer
, 133 Ill. App. 3d 1019, 479 N.E.2d 982 (1985); 735 ILCS 5/11-110 (West 1998).

6:
In 
Schwartz
, the court granted the husband's request for a preliminary injunction to enjoin his wife from prohibiting his use of a Florida condominium titled in the wife's name alone.  The circuit court based its findings on the likelihood of the success of his argument that he had a right to enter and use the Florida condominium because it would eventually be found "marital property."  In reversing, the appellate court found that the trial court was premature in its determination that the husband had a right to enter the condominium and that the injunction therefore should issue, holding "[i]t is only property owned at the time of the judgment of dissolution that the court may classify as 'marital property,' and property owned separately by the spouse before dissolution may be disposed of as he/she deems fit, absent any contrary order of the court."  
Schwartz
, 131 Ill. App. 3d at 355.  The circuit court should have focused on preserving the status quo among the parties, rather than on the likelihood of success as to the marital property.  The last actual, peaceable, uncontested status in existence was one where the wife had title to the condominium which she allowed the husband to use.  The court order altered the status quo by taking away her right to exclude whomever she wanted from possession of her property.  

7:
Relying on 
In re Marriage of Birt
, 157 Ill. App. 3d 363, 510 N.E.2d 559 (1987) (
Birt
) and 
Stoller
, Kevin argues that rulings on discovery issues are not rulings on substantial issues for purposes of a motion for substitution as of right.  Neither case holds, however, that rulings on discovery motions never may be rulings on substantial issues.  In 
Birt
, the appellate court held that the judge had not ruled on a substantial issue in the case prior to the motion for substitution of judge, where the only rulings made were on two motions to limit discovery filed by non-parties to the action.  The motions were not related to the merits of the case.  The appellate court also noted that the judge was not assigned to the case at the time of his rulings; rather, was filling in on another judge's motion call.

In 
Stoller
, the appellate court found that the circuit judge had not made any substantive rulings where the judge entered various orders involving compliance with discovery requests, release of medical records, and the setting of dates for interrogatories, submission of witness lists and trial.  The plaintiff there argued that the judge's orders regarding the production of documents were substantive rulings.  The appellate court disagreed, stating that the record showed no deliberation over the selection of documents to be produced.  The circuit judge entered orders requiring the parties to produce any and all medical records.  Because the judge's orders did not go to the admissibility or relevance of the information, but were merely preliminary, administrative and preparatory for trial, they were not considered substantive rulings.

8:
See 
Bonnie Own Realty, Inc. v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 812, 670 N.E.2d 1182 (1996) (ruling on motion to compel deposition was ruling on a substantial issue in the case where the ruling was a clear indication of the court's opinion that extrinsic evidence would not be admissible for the purpose of determining whether defendant had a duty to defend); 
Kochan v. Owens-Corning Fiberglass, Corp.
, 242 Ill. App. 3d 781, 610 N.E.2d 683 (1993) (holding that circuit court's ruling on discovery motions was a ruling on a substantial issue because it was more than merely administrative or ministerial but pertained to evidentiary matters at trial).

9:
Kevin argues that the following comments, made during a pretrial and settlement conference, set forth sufficient support for his allegation of bias to warrant a substitution of judge for cause.  No transcripts of proceedings of these meetings were filed. 

A. "The two of you should sit apart because you are going to get mad at each other.  Kevin, tell me why you are mad at Janet."

B. "Kevin it is a bad thing if anyone is telling the children anything that upsets them but it is very bad if you are not paying support.  You have ignored several court orders.  I know the other judges and I respect their opinions."

With regard to Kevin's safety concern regarding the children visiting their grandfather without parental supervision, Judge Berger stated:

C. "Kevin, if you cannot let go of this then we are going to have a full custody trial and you will have wasted my time here today.  You are going to waste a lot of money.  Are you rich like Bill Gates?"

D. "Kevin, I do not understand how you can believe that Janet is capable of overlooking a real threat to her children.  You know I was not born yesterday.  It is possible that you do not want the boys to have a relationship with your father because you believe that Janet is cozying up to him because she hopes to get money from him."

"Kevin, we have a problem here because you not only doubt Janet but you have ignored the judgment of two other judges."

10:
Adopting and re-alleging his previous arguments regarding disqualification, Kevin argues Judge Berger erred in not recusing herself under Supreme Court Rule 63 (155 Ill. 2d R. 63).  For the reasons stated above, Judge Berger did not err in refusing to recuse herself.