*In re* MARRIAGE OF LISA ANN SHERFEY HARI, Petitioner-Appellant, and DAVID ALAN HARI, Respondent-Appellee.

Fourth District No. 4—03—0382

Opinion filed February 3, 2004.

Wayne O. Smith, of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellant.

J. Patrick Lee, of Dilks, Rodeen & Gibson, Ltd., of Paxton, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 2002, petitioner, Lisa Ann Sherfey Hari, filed separate petitions, seeking (1) to dissolve her marriage to respondent, David Alan Hari, and (2) temporary custody of the parties' two children and child support. Later that month, the trial court granted Lisa temporary custody of the children and ordered David to pay $197 in biweekly child support. In April 2002, the court ordered David (who was then in jail awaiting trial on charges of first degree murder of Lisa's boyfriend and attempted murder of Lisa) to pay temporary child support out of funds that were then being held in David's attorney's trust account.

In January 2003, the trial court entered a judgment dissolving the parties' marriage, and in February 2003, the court entered a written order resolving the remaining issues. In particular, the court (1) granted Lisa custody of the parties' children and (2) reserved the issue of child support. Later that month, Lisa filed a motion to reconsider, arguing, in pertinent part, that the court erred by failing to order that David pay child support out of his nonmarital funds that were then deposited in bank accounts. In April 2003, the court denied Lisa's motion, upon determining that it had no discretion to order David to use nonmarital funds to secure payment of child support.

Lisa appeals, arguing that the trial court erred by refusing to order that David pay child support out of his nonmarital funds. Because we agree with Lisa's argument, we reverse and remand for further proceedings.

## I. BACKGROUND

Lisa and David were married in June 1989. During their marriage, they had two children, Zachary (born January 22, 1990) and Kyle (born May 8, 1996). In January 2002, Lisa filed a petition to dissolve the parties' marriage. Later that month, Lisa filed a petition, seeking temporary custody of Zachary and Kyle and child support. Still later in January 2002, the trial court granted Lisa temporary custody of the children and ordered David to pay $197 in biweekly child support, which represented 25% of David's biweekly net income. (The recommended statutory child support amount for two children is 25% of the supporting parent's net income (750 ILCS 5/505(a)(1) (West 2000)).)

Following a hearing, in February 2002, the trial court entered an order clarifying (1) the terms of David's visitation with Zachary and Kyle and (2) that temporary child support commenced on January 26, 2002. Two days later, on February 10, 2002, police arrested David for the first degree murder of Lisa's boyfriend and the attempted murder of Lisa, which took place that same day at the parties' marital home. Later in February 2002, Lisa filed a petition, requesting, in pertinent part, that the court order that temporary child support be paid from funds that David's mother (to whom he had assigned his power of attorney) had withdrawn from David's two accounts at Farmers Merchants National Bank (Farmers Bank).

In April 2002, the trial court ordered that David (1) not dispose of the bank account funds, which were then being held in David's attorney's trust account, and (2) pay $197 in biweekly child support from those funds. Later that month, David filed an accounting, which indicated that (1) he had opened one of his Farmers Bank accounts prior to the parties' June 1989 marriage (in May 1989, the funds in that account totaled $15,528); (2) in February 2002, $17,000 was transferred from Farmers Bank to David's attorney's trust account; (3) the funds were later transferred from the attorney's trust account to a money-market account and a checking account at Roberts State Bank (Roberts Bank); and (4) funds from the Roberts Bank accounts were being used for temporary child support payments and other expenditures, such as David's medications, attorney fees, and life insurance premiums.

In October 2002, Lisa filed a petition, seeking, *inter alia*, temporary maintenance. The petition alleged that Lisa had been unable to work since David shot her in February 2002.

At the start of the January 2003 hearing on Lisa's dissolution petition, the trial court noted that (1) David had been convicted of first degree murder and attempted murder and sentenced to an aggregate of 73 years in prison; and (2) David, who was then 40 years

old, would have to serve at least 69 years of that sentence. The court then remarked that

> "obviously[,] based on these facts[,] there would be no child support ordered ***. Unless something should change, a reversal in the conviction, *** there is nothing else I could do at this point."

The parties then agreed that (1) Lisa be granted custody of Zachary and Kyle; and (2) Lisa be awarded the following: (a) the marital home, valued at $70,000, (b) a 2001 Silverado truck valued at $15,000, (c) a 1988 Ford sedan valued at $500, (d) an individual retirement account valued at $6,790, and (e) all of the marital personal property, except a dining room table, matching chairs, and several guns. The parties also stipulated that the Roberts Bank funds (which totaled approximately $7,000) constituted David's nonmarital property.

Lisa then presented evidence in support of her petition. Lisa testified that prior to being shot, she operated a day-care business out of the marital home. She usually earned $150 per week. As a result of being shot, Lisa had (1) a bullet permanently lodged in her head, (2) headaches, (3) short-term memory loss, (4) problems with her speech, balance, and vision, and (5) post-traumatic stress. She had been unable to work since the shooting, and her parents had provided financial support for Zachary and Kyle. Prior to his arrest, David worked for Alexander Lumber in Gibson City and had a weekly net income totaling $300.

Jerri Sherfey, Lisa's father, testified that after the February 2002 shooting, Lisa, Zachary, and Kyle lived with Jerri and his wife until early June 2002. Jerri explained that the marital home required extensive cleaning and many repairs as a result of the shooting. Jerri and his wife also had provided financial assistance to Lisa and the children since the shooting.

After considering the evidence and counsel's arguments, the trial court declined to order David to pay child support. The court reasoned that (1) because David was in prison, he had no net income; and (2) it could not order that child support be paid out of David's nonmarital assets.

Later in January 2003, the trial court entered a judgment dissolving the parties' marriage. In February 2003, the court entered a written order, resolving the remaining issues. In particular, the court (1) granted Lisa custody of the children; (2) reserved child support because David had been sentenced to prison "essentially for the rest of his life"; (3) awarded Lisa all of the marital property, except for several guns and a dining room table and chairs; and (4) ordered her to pay bank, credit card, and medical debts, totaling approximately $11,700. The court awarded David (1) the guns and dining room table and

chairs and (2) the Roberts Bank accounts, which totaled approximately $7,000, as his nonmarital property. The court also ordered that David file joint income tax returns for 2001 and 2002, and if he failed to do so, that the Roberts Bank money-market account funds be used to pay Lisa $400 in monthly maintenance.

Later in February 2003, Lisa filed a motion to reconsider, arguing, in pertinent part, that the trial court erred by failing to order that David pay child support out of his Roberts Bank accounts. In April 2003, the court denied Lisa's motion, stating, in pertinent part, as follows: "The [c]ourt believes it has no discretion to order [David] to use a non[ ]marital bank account *** to secure payment of child support based on the previous temporary child support order of $197.00 every other week."

This appeal followed.

## II. THE TRIAL COURT'S REFUSAL TO ORDER DAVID TO PAY CHILD SUPPORT OUT OF NONMARITAL FUNDS

Lisa argues that the trial court erred by refusing to set aside David's nonmarital Roberts Bank accounts and to order him to pay child support out of those funds. We agree.

This issue requires a two-step inquiry. First, the trial court must determine if it should order the noncustodial, imprisoned parent to pay child support, and if so, how much. Second, the court should determine whether it should set aside any assets, including the noncustodial parent's nonmarital assets, to assure payment of the child support obligation.

### A. Whether To Order Child Support

■ Incarceration of the noncustodial parent does not automatically relieve that parent of the obligation to support his child. *People ex rel. Meyer v. Nein*, 209 Ill. App. 3d 1087, 1089, 568 N.E.2d 436, 437 (1991); *In re Marriage of Burbridge*, 317 Ill. App. 3d 190, 193, 738 N.E.2d 979, 982 (2000). Instead, the decision whether to order the imprisoned parent to pay child support lies within the trial court's discretion. *Burbridge*, 317 Ill. App. 3d at 193, 738 N.E.2d at 982. In exercising its discretion, the court should consider all relevant factors, including the following: (1) the assets of the incarcerated parent; (2) the reason the parent entered prison; (3) the length of incarceration; and (4) the potential for work release. *Burbridge*, 317 Ill. App. 3d at 193, 738 N.E.2d at 982. In addition, this court has noted that the trial court's discretion generally should be guided by the principle that child support obligations should not be suspended or terminated if the incarcerated, noncustodial parent has available assets. *Nein*, 209 Ill. App. 3d at 1089, 568 N.E.2d at 437.

■ In this case, the trial court's remarks at the January 2003 hearing on Lisa's dissolution petition indicate that it did not recognize that it had discretion to order David to pay child support. Instead, the court apparently thought that the mere fact that David would be imprisoned for a long period of time precluded it from ordering him to pay child support. As our previous discussion shows, the court was mistaken.

Moreover, had the court exercised its discretion and refused to order that David pay child support, we would conclude that such decision constituted an abuse of discretion. We acknowledge that David was serving a 73-year sentence and was not eligible for work release. However, more important, the record shows that at the time of the January 2003 hearing, David had nonmarital assets totaling approximately $7,000. In addition, David was imprisoned because shortly after Lisa sought to divorce him and the trial court granted her temporary custody of their children, he tried to kill her and succeeded in killing her boyfriend. Thus, by his acts, David rendered himself unable to provide for Zachary and Kyle, and further, by inflicting upon the mother of his children both physical and emotional trauma, he severely limited her ability to provide for them as well. Under these circumstances, David should neither benefit from his crimes nor be insulated from his obligation to support Zachary and Kyle. We thus conclude that the court should have exercised its discretion by ordering David to pay child support.

As to the amount of child support, both parties seemed to agree that the amount set forth in the temporary child support order ($197 biweekly) constituted an appropriate amount. Indeed, David does not argue otherwise on appeal.

### B. Whether To Set Aside Assets To Assure Payment of the Child Support Obligation

Lisa argues that the trial court erred by refusing to set aside David's nonmarital funds then deposited at Roberts Bank and order that he pay child support out of those funds. We agree.

■ As earlier stated, if the trial court orders that the incarcerated, noncustodial parent pay child support, it must then determine whether to set aside any assets, including the noncustodial parent's nonmarital assets, to assure payment of the child support obligation. Section 503(g) of the Illinois Marriage and Dissolution of Marriage Act provides, in pertinent part, as follows:

> "The court[,] if necessary to protect and promote the best interests of the children[,] may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for

the support, maintenance, education, and general welfare of any minor \*\*\* child of the parties." 750 ILCS 5/503(g) (West 2000).

A need for such protection arises when the noncustodial parent is either "unwilling or unable to make child support payments." *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 343, 744 N.E.2d 877, 890 (2001). Thus, section 503(g) explicitly allows the trial court to set aside in a separate fund a portion of the noncustodial parent's nonmarital or marital assets to assure payment of his child support obligation if that parent is either unwilling or unable to make child support payments.

■ In this case, the trial court erroneously believed that it had no discretion to set aside David's nonmarital bank account funds to assure payment of his child support obligation. The record here supported a determination that due to David's incarceration, he was unable to make child support payments. Thus, under the particular circumstances of this case, the court erred by refusing to set aside the nonmarital funds in David's bank accounts to promote and protect Zachary and Kyle's best interest and assure payment of David's child support obligation. To the extent that setting aside those funds places a burden on David or means he is unable to partake of prison fineries, we are not troubled. The focus should be on assuring that the children are supported, not on making David's imprisonment easier. Accordingly, we reverse and remand for further proceedings consistent with the views expressed herein.

As a final matter, we reject David's contention that the trial court properly refused to set aside his nonmarital funds because (1) section 505(a)(1) "specifically states that child support is to be paid from the net income of the supporting party" (750 ILCS 5/505(a)(1) (West 2000)); and (2) Lisa does not claim that his nonmarital assets produce any income. David misconstrues section 505(a)(1). That section directs the trial court to determine the minimum child support award by taking a fixed percentage of the supporting party's "net income." Section 505(a)(1) does not limit what assets the trial court can reach to assure that the child support award is satisfied.

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded for further proceedings.

KNECHT, P.J., and APPLETON, J., concur.