# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Tiballi*, 2013 IL App (2d) 120523

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF ROBERT N. TIBALLI, Petitioner-Appellant, and SHEILA J. ILAGAN TIBALLI, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-12-0523 |
| Filed | June 7, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The fees of a psychologist appointed pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act in a child custody dispute were taxable as costs upon petitioner's voluntary dismissal of his petition to modify custody, and the trial court's order requiring petitioner to reimburse respondent for the half of the psychologist's fees that she paid was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 02-D-1506; the Hon. Robert P. Pilmer, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Timothy E. Weiler and Rory T. Weiler, both of Weiler & Lengle, P.C., of St. Charles, for appellant. |
| --- | --- |
| | Debra R. Antone, of Debra R. Antone, P.C., of Chicago, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justice Hutchinson concurred in the judgment and opinion. Justice Zenoff dissented, with opinion. |

# OPINION

¶ 1    In September 2005, the circuit court of Kane County entered a judgment dissolving the marriage of Robert N. Tiballi and Sheila J. Ilagan Tiballi. This appeal stems from a child custody dispute that arose years later. Robert filed a petition to modify custody, but the petition was voluntarily dismissed without prejudice. The trial court ordered Robert to pay the fees of a psychologist appointed by the trial court pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/604(b) (West Supp. 2011)). Robert argues on appeal that the fees were not taxable as costs upon the voluntary dismissal of his petition. We disagree and therefore affirm.

¶ 2    The judgment of dissolution awarded the parties joint legal custody of their daughter, Francesca, but designated Sheila as the residential custodian. In January 2010, Robert filed his petition to modify the judgment by designating him as Francesca's residential custodian. Pursuant to section 604(b) of the Act, the trial court appointed psychologist Robert B. Shapiro to advise the court in connection with the custody dispute. The order appointing Shapiro evenly divided the costs of Shapiro's services between the parties. Shapiro submitted a written report recommending that Francesca continue to reside with Sheila. Sheila moved to dismiss Robert's petition, alleging that, through his attorney, he had indicated that he no longer planned to proceed with the petition. The trial court granted the motion. The trial court subsequently modified the order to provide that the dismissal was without prejudice. In doing so, the trial court also granted Sheila leave to file a petition for costs. In her petition, Sheila alleged, *inter alia*, that pursuant to the order appointing Shapiro she had paid Shapiro $4,975, which represented her share of his fees. She sought reimbursement of the sum from Robert. The trial court entered judgment against Robert for $4,975, and this appeal followed.[1]

---

[1]We note that the trial court was empowered to apportion Shapiro's fees under both section 604(b) of the Act and section 2-1009(a) of the Code of Civil Procedure (735 ILCS 5/2-1009(a) (West 2010)); considering the totality of the circumstances, we do not deem the assessment, either before

¶ 3 Section 604(b) provides:

"The court may seek the advice of professional personnel, whether or not employed by the court on a regular basis. The advice given shall be in writing and made available by the court to counsel. Counsel may examine, as a witness, any professional personnel consulted by the court, designated as a court's witness. Professional personnel consulted by the court are subject to subpoena for the purposes of discovery, trial, or both. The court shall allocate the costs and fees of those professional personnel between the parties based upon the financial ability of each party and any other criteria the court considers appropriate. Upon the request of any party or upon the court's own motion, the court may conduct a hearing as to the reasonableness of those fees and costs." 750 ILCS 5/604(b) (West Supp. 2011).

Beyond the statutory authority to allocate fees, courts have the inherent power to order the parties to pay the fees of a witness retained under this provision. *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 333-34 (2001). As noted, the issue raised on appeal is whether fees charged by a professional appointed pursuant to section 604(b) of the Act constitute "costs" that may be taxed to a party who voluntarily dismisses, without prejudice, a petition to modify child custody. For the reasons that follow, we hold that such fees are taxable as costs in such an instance.

¶ 4 In *Vicencio v. Lincoln-Way Builders, Inc.*, 204 Ill. 2d 295 (2003), a plaintiff who prevailed in a personal injury lawsuit sought to recover from the defendant the costs associated with taking the evidence deposition of the plaintiff's treating physician. Those costs included, *inter alia*, the physician's fee. The court noted that "only those costs specifically designated by statute may be taxed as costs," but added that "the legislature may nevertheless grant the power to the courts to make rules under which costs may be taxed." *Id.* at 300. The court proceeded to consider whether the physician's fee was recoverable under either section 5-108 of the Code of Civil Procedure (Code) (735 ILCS 5/5-108 (West 2010)) or Illinois Supreme Court Rule 208(d) (eff. Oct. 1, 1975). Section 5-108 provides, "If any person sues in any court of this state in any action for damages personal to the plaintiff, and recovers in such action, then judgment shall be entered in favor of the plaintiff to recover costs against the defendant, to be taxed, and the same shall be recovered and enforced as other judgments for the payment of money, except in the cases hereinafter provided." 735 ILCS 5/5-108 (West 2010). In concluding that this provision did not apply to the physician's fee, the court reasoned as follows:

"Under its definition of 'costs,' Black's Law Dictionary distinguishes between court costs, the 'charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees,' and litigation costs, the 'expenses of litigation, prosecution, or other legal transaction, esp[ecially] those allowed in favor of one party against the other.' [Citation.] It is undisputed that section 5-108 mandates the taxing of costs commonly understood to be 'court costs,' such as filing fees, subpoena fees, and statutory witness fees, to the losing party.

_____

or after the nonsuit, an abuse of discretion.

The fee of the treating physician that is at issue in the present case is a 'litigation cost,' and as such, is not a cost the taxing of which is mandated by section 5-108. Thus, it may be taxed as a cost only if authorized by another statute or by supreme court rule." *Vicencio*, 204 Ill. 2d at 302.

¶ 5 Here, the trial court ordered Robert to pay Shapiro's fees pursuant to section 2-1009(a) of the Code, which provides, "The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, *and upon payment of costs*, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause." (Emphasis added.) 735 ILCS 5/2-1009(a) (West 2010). It is undisputed that the dismissal of Robert's petition was in the nature of a voluntary dismissal under section 2-1009(a). By extension of the reasoning set forth in *Vicencio*, we read the word "costs," as used in section 2-1009(a), to mean "court costs"–a term used in contradistinction to "litigation expenses." The resolution of this appeal depends on which category includes the fees of a professional appointed by the trial court pursuant to section 604(b).

¶ 6 In our view, what distinguishes court costs (such as filing fees, jury fees, subpoena fees, and statutory witness fees) from litigation expenses (such as the treating physician's fees in *Vicencio*) is the mandatory and nonnegotiable character of the former. The fees in the first category are those that must be paid simply to have one's case heard (before a jury if appropriate) and to obtain compulsory attendance of witnesses and production of evidence. Payment of these fees provides modest recompense for citizens summoned by the court to give testimony and helps to defray the operational expenses of the court system (including the expense of compensating those called to serve as jurors). In this way, these fees differ from privately incurred expenses, such as fees (beyond those required by statute) that a party agrees to pay a treating physician as compensation for time spent assisting in the preparation of the case and providing testimony.

¶ 7 The fees of a professional appointed pursuant to section 604(b) are analogous to the fees that have been deemed to be recoverable court costs. The section 604(b) professional is retained by the court to assist it in deciding the controversy before it. The professional neither is retained by, nor serves at the behest of, any party. Whether to engage the services of the professional is ultimately the prerogative of the court, not of the parties, and the professional's fees are not subject to private negotiation in the same way a treating physician's fees for litigation services might be. The services of section 604(b) professionals are a judicial resource, not a private litigation resource. We see no reason to treat the costs of such services differently from the costs of other judicial resources (both physical and human) that are defrayed by the collection of various fees and that are taxable under sections 5-108 and 2-1009(a) of the Code and similar provisions.

¶ 8 Relying on both *Vicencio* and an earlier decision from our supreme court, *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157 (1982), Robert argues that, because his petition did not proceed to trial, Shapiro's fees were not taxable as costs. At issue in *Galowich* was whether the defendants' *deposition expenses* were recoverable under Rule 208(d). When *Galowich* was decided, Rule 208 provided in part as follows:

"(a) Who Shall Pay. The party at whose instance the deposition is taken shall pay the fees of the witness and of the officer and the charges of the recorder or stenographer for attending. The party at whose request a deposition is transcribed and filed shall pay the charges for transcription and filing. The party at whose request a tape recorded deposition is filed without having been transcribed shall pay the charges for filing, and if such deposition is subsequently transcribed the party requesting it shall pay the charges for such transcription. If, however, the scope of the examination by any other party exceeds the scope of examination by the party at whose instance the deposition is taken, the fees and charges due to the excess shall be summarily taxed by the court and paid by the other party.

(b) Amount. The officer taking and certifying a deposition is entitled to any fees provided by statute, together with the reasonable and necessary charges for a recorder or stenographer for attending and transcribing the deposition. Every witness attending before the officer is entitled to the fees and mileage allowance provided by statute for witnesses attending courts in this State.

(c) Copies. Upon payment of reasonable charges therefor, the officer shall furnish a copy of the deposition to any party or to the deponent.

(d) Taxing as Costs. The aforesaid fees and charges may in the discretion of the trial court be taxed as costs." Ill. S. Ct. R. 208 (eff. Oct. 1, 1975).

¶ 9    The *Galowich* court stated, "We *** interpret Rule 208(d) as authorizing the trial court to tax as costs, in its discretion, the expenses only of those depositions necessarily used at trial." *Galowich*, 92 Ill. 2d at 166. The court explained:

"This interpretation of the rule accords with this court's frequent statements that a successful litigant is not entitled to recover the ordinary expenses of litigation. [Citations.] *The deposition as used in modern litigation is almost entirely a technique of trial preparation, serving primarily the convenience of counsel*. Though there may be instances in which a discovery deposition would become a necessity–as when a crucial witness died or disappeared before trial–it is difficult to say that all or even most of the depositions routinely taken in preparation for trial are necessary. Litigants in Illinois must bear their own litigation and trial-preparation expenses, and in our view these include the expenses of discovery depositions." (Emphasis added.) *Id.*

The *Vicencio* court observed that, because there was no trial in *Galowich*, the "necessarily used at trial" standard could not be satisfied and the defendant was required to bear its own deposition expenses for that reason alone. *Vicencio*, 204 Ill. 2d at 306 ("In effect, the determinative factor in *Galowich* was not 'necessary use'; it was 'at trial.' ").

¶ 10    Robert contends that the case before us is "a carbon copy of the *Galowich* decision." The metaphor is apt only inasmuch as an original and a carbon copy, when viewed side by side, are easy to distinguish from one another, as are *Galowich* and this case. The rule announced in *Galowich* and clarified in *Vicencio* flowed from our supreme court's understanding that deposition expenses are normally considered trial-preparation expenses, and are therefore not recoverable as court costs. As the court explained in *Galowich*, discovery depositions are primarily for counsel's convenience. Obviously the same cannot be said about the services

of a professional retained under section 604(b) of the Act–his or her principal function is to advise the trial court, not to assist a party in preparing for trial. Accordingly, *Galowich* and *Vicencio* provide no support for Robert's argument.

¶ 11     The dissent suggests that the record is unclear as to the nature of the dismissal and infers that such an ambiguity might affect the analysis. We do not accept the dissent's suggestion that the dismissal was for want of prosecution, because the trial court related in its April 5, 2012, order, "The Court finds that the [section] 604(b) cost of Dr. Shapiro was a court cost under [section] 2-1009." Nevertheless, costs would be recoverable even if the dismissal were for want of prosecution (see 735 ILCS 5/5-116 (West 2010)).

¶ 12     The dissent further relates as follows: "A guardian *ad litem*'s fees also would meet the majority's definition of being 'mandatory and nonnegotiable.' Would these qualify as costs under section 2-1009(a)?" *Infra* ¶ 28. Taxing guardian *ad litem* fees as costs was the statutory practice under the now-repealed Chancery Act (Ill. Rev. Stat. 1975, ch. 22, ¶ 6). See *Chicago Title & Trust Co. v. Czubak*, 52 Ill. App. 3d 986 (1977). Presently, section 27-4 of the Probate Act of 1975 provides:

> "§ 27-4. Compensation of a guardian ad litem or special administrator. A guardian ad litem or special administrator is entitled to such reasonable compensation as may be fixed by the court to be taxed as costs in the proceedings and paid in due course of administration." 755 ILCS 5/27-4 (West 2010).

The dissent identifies the following features of court costs: "no judgment or court order is required for a party to incur court costs" (*infra* ¶ 31); "court costs generally are fixed and are not subject to determinations of reasonableness" (*infra* ¶ 32); "court costs are incurred regardless of the type of litigation involved" (*infra* ¶ 34); and "court costs are incurred for generic administrative and court-funding reasons, not for specific merits-based or policy-based reasons" (*infra* ¶ 35). Section 27-4 guardian *ad litem* fees–which the General Assembly considers to be court costs–have none of these characteristics. See 755 ILCS 5/27-4 (West 2010).

¶ 13     For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 14     Affirmed.

¶ 15     JUSTICE ZENOFF, dissenting.

¶ 16     I respectfully dissent because I disagree with the majority's conclusion that the fees of a professional custody evaluator appointed pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/604(b) (West Supp. 2011)) fall under the term "costs" in section 2-1009(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1009(a) (West 2010)).

¶ 17     Before discussing the merits of this issue, however, I feel compelled to make an observation on the procedural posture of this case. While the majority has given this aspect of the record little attention, I believe that it reveals a shaky foundation underlying this appeal. This observation also serves, I believe, as a reminder of how careless disregard for

procedural rules creates easily avoidable disputes like the one before us.

¶ 18 Although the majority states that "[i]t is undisputed that the dismissal of Robert's petition was in the nature of a voluntary dismissal under section 2-1009(a)" (*supra* ¶ 5), the record does not support the parties' characterization in this regard. Following Dr. Shapiro's custody evaluation, which is file-stamped June 13, 2011, the next document in the record is Sheila's October 27, 2011, motion for "entry of dismissal" and for discharge of the guardian *ad litem*. In her motion, Sheila alleged that the trial on Robert's petition to modify custody was scheduled to begin on September 13, 2011, but that, after Dr. Shapiro filed his custody evaluation, Robert "advised through counsel that he was not going to proceed with his Petition." Sheila further alleged that, on September 12, 2011, Robert's attorney notified the court that trial would not proceed as scheduled. Sheila noted that no dispositive order ever was entered.

¶ 19 The next document in the record is the court's November 29, 2011, order, in which the court granted Sheila's motion for entry of dismissal. The order states that "[t]he matter is dismissed [and] taken off the call." The order makes no mention of costs. The record does not contain a transcript of the hearing on Sheila's motion.

¶ 20 Next in the record is Robert's motion to vacate the November 29, 2011, order. Robert alleged that the parties' attorneys had reached an agreement regarding the terms of a proposed order to be entered, and that the order entered did not conform to that agreement. The details of the agreement are not disclosed. The court granted Robert's motion in part by modifying the dismissal order to include the language "without prejudice." The court also granted Sheila leave to file a motion for costs. Once again, the record does not contain a transcript of the hearing on Robert's motion to vacate.

¶ 21 Based on the record before us, it is difficult to characterize what occurred here as a section 2-1009(a) voluntary dismissal. The trial court dismissed the action on Sheila's motion, not at Robert's request. Sheila filed her motion for entry of dismissal after more than four months of inactivity in the case, and after the scheduled trial date had come and gone with no order being entered. To my knowledge, a party cannot "voluntarily dismiss" an opposing party's action. Before the court modified it, the dismissal order stated that "[t]he matter is dismissed [and] taken off the call," and it made no mention of costs. Although Robert succeeded in having the dismissal order modified to include the language "without prejudice," this would have been unnecessary had this been a voluntary dismissal pursuant to section 2-1009(a), because by statute a party has one year to refile an action that has been voluntarily dismissed. 735 ILCS 5/13-217 (West 1994).[2]

---

[2]As this court has explained, "[t]he version of section 13-217 in effect is the version that preceded the amendments to Public Act 89-7 (Pub. Act 89-7, eff. March 9, 1995), which our supreme court found unconstitutional in its entirety." *Domingo v. Guarino*, 402 Ill. App. 3d 690, 698 n.3 (2010).

However, technically, it is unclear whether there is any limitation at all on the refiling of a postdissolution custody petition that has been voluntarily dismissed, because section 13-217 appears in article XIII of the Code, which is not expressly applicable to proceedings under the Act. See Sanjay T. Tailor, *Better Civil Practice in Dissolution of Marriage Litigation*, 40 Loy. U. Chi. L.J.

¶ 22    In addition, while the record suggests that Robert consented to the entry of a dismissal order that differed from the one actually entered, nowhere in Sheila's motion for entry of dismissal, in the court's dismissal order, or in Robert's motion to vacate the dismissal order does the phrase "voluntary dismissal" appear. Nor do those documents reference section 2-1009(a) of the Code. Section 2-1009(a) provides that a plaintiff may dismiss his or her action, or any part thereof, "by order filed in the cause." 735 ILCS 5/2-1009(a) (West 2010). Here, there is no voluntary dismissal order; there is only an order granting Sheila's motion for entry of dismissal. The absence of transcripts in the record further hinders our ability to characterize what occurred here as a section 2-1009(a) voluntary dismissal. In sum, I have trouble relying on the parties' characterization of the procedural posture of this case when that characterization is unsupported by the record. Section 2-1009(a) references only the payment of costs by a plaintiff who, upon notice to each party, voluntarily dismisses his or her action by order filed in the cause.

¶ 23    However, even if this were a voluntary dismissal under section 2-1009(a), I would agree with Robert that the fees of a section 604(b) evaluator are not recoverable as costs under section 2-1009(a). Accordingly, I would reverse the trial court's judgment.

¶ 24    Because no Illinois court has addressed this issue, the majority looks to cases involving other categories of costs for guidance. The majority discusses *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157 (1982), and *Vicencio v. Lincoln-Way Builders, Inc.*, 204 Ill. 2d 295 (2003).

¶ 25    In *Galowich*, the supreme court addressed the issue of whether the predecessor to section 2-1009(a) of the Code required the plaintiffs, who had voluntarily dismissed their case before trial, to pay as costs the defendants' deposition expenses. *Galowich*, 92 Ill. 2d at 159-60. In addressing this issue, the court looked to Illinois Supreme Court Rule 208 (eff. Oct. 1, 1975), which permitted a trial court to tax as costs certain expenses incurred in taking, transcribing, and filing depositions. *Galowich*, 92 Ill. 2d at 162-63. The court noted that neither the costs statute nor any supreme court rule provided a definition of the term "costs." *Galowich*, 92 Ill. 2d at 165. Searching elsewhere for a definition, the court explained: "[T]he term has acquired a fixed and technical meaning in the law. Costs are allowances in the nature of incidental damages awarded by law to reimburse the prevailing party, to some extent at least, for the expenses necessarily incurred in the assertion of his rights in court." *Galowich*, 92 Ill. 2d at 165-66. Ultimately, the court concluded that only the expenses incurred in taking a deposition that was necessarily used at trial were recoverable under Rule 208. *Galowich*, 92 Ill. 2d at 166. Because no trial had occurred–since the plaintiffs had voluntarily dismissed their case prior to trial–the court held that the defendants' deposition expenses were not recoverable as costs under the voluntary dismissal statute. *Galowich*, 92 Ill. 2d at 167.

¶ 26    In *Vicencio*, the issue was whether a trial court could assess as costs the fees charged by

911, 934-40 (2009) (noting that, because section 13-217 is not expressly applicable to dissolution proceedings, and because dissolution actions are not subject to a limitations period, a petitioner in a dissolution action who has voluntarily dismissed an action "should have an absolute right to re-file against the same party and to re-allege the same cause of action at any time").

a plaintiff's treating physician for his participation in an evidence deposition that was used at trial. *Vicencio*, 204 Ill. 2d at 297. Although *Vicencio* involved an award of costs pursuant to section 5-108 of the Code to a plaintiff who had prevailed at trial, not the payment of costs to an opposing party upon a voluntary dismissal, the court began by discussing the *Galowich* court's definition of the term "costs." *Vicencio*, 204 Ill. 2d at 301. The *Vicencio* court first agreed with the *Galowich* court that the plain and ordinary meaning of the word "costs" was not helpful, because the word had become a term of art. *Vicencio*, 204 Ill. 2d at 297. According to the *Vicencio* court, however, the *Galowich* court's definition of the term "costs" was not workable, because the definition was "descriptive" rather than "prescriptive." *Vicencio*, 204 Ill. 2d at 301. The *Vicencio* court explained: "That is, [the *Galowich* court's definition] describes a characteristic shared by all categories of taxable costs ('necessarily incurred'), but it does not prescribe a rule that draws a line between those that must be taxed pursuant to section 5-108 and those that may be taxed pursuant to another statute or rule." *Vicencio*, 204 Ill. 2d at 301-02. The *Vicencio* court concluded that the term "costs" meant "court costs," which Black's Law Dictionary defined as the " 'charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees.' " *Vicencio*, 204 Ill. 2d at 302 (quoting Black's Law Dictionary 350 (7th ed. 1999)). The court noted as other examples of court costs subpoena fees and statutory witness fees. *Vicencio*, 204 Ill. 2d at 302. The court further explained that court costs were distinguishable from "litigation costs," which Black's Law Dictionary defined as " 'expenses of litigation, prosecution, or other legal transaction, esp[ecially] those allowed in favor of one party against the other.' " *Vicencio*, 204 Ill. 2d at 302 (quoting Black's Law Dictionary 350 (7th ed. 1999)). Ultimately, the court held that the treating physician's deposition fees were a litigation cost, not a court cost. *Vicencio*, 204 Ill. 2d at 302.

¶ 27    Respectfully, I believe that the majority has repeated the error of the *Galowich* court, which is to say that the majority has offered a descriptive definition of the term "costs" rather than a prescriptive one. Initially, I agree with the majority's decision, "[b]y extension of the reasoning set forth in *Vicencio*" (*supra* ¶ 5), to treat the word "costs" in section 2-1009(a) as court costs. However, I do not agree with the majority's decision to then describe all categories of court costs as sharing the broad characteristics of "mandatory and nonnegotiable" (*supra* ¶ 6). In *Vicencio*, the court explained that the characteristic of being "necessarily incurred" was inadequate to provide a working definition of the term "costs." *Vicencio*, 204 Ill. 2d at 301-02. The court departed from the *Galowich* court's broad, descriptive definition and instead relied on a narrow, prescriptive definition from Black's Law Dictionary, which provided specific examples of court costs.

¶ 28    Here, rather than follow the *Vicencio* court's example of favoring a narrow and prescriptive definition over a broad and descriptive definition, the majority has done just the opposite. It has extrapolated from *Vicencio*'s narrow and prescriptive definition of costs a broad and descriptive definition of that term. The majority's descriptive definition relies upon characteristics ("mandatory and nonnegotiable") that, although shared by all categories of costs, fail to adequately draw a line between those costs that must be paid by a plaintiff who voluntarily dismisses a lawsuit and those costs that need not be paid. Court-imposed sanctions also are "mandatory and nonnegotiable," but a plaintiff is not required to

compensate the opposing party for sanctions upon voluntarily dismissing a lawsuit. A guardian *ad litem*'s fees also would meet the majority's definition of being "mandatory and nonnegotiable." Would these qualify as costs under section 2-1009(a)? The trial court in this case denied the portion of Sheila's motion for costs that sought reimbursement of her share of the guardian *ad litem*'s fees. However, because the record contains no transcripts, we have no indication of how the court reached that decision. In sum, I believe that the majority's definition of the term "costs" in section 2-1009(a) is not an adequate working definition of that term. I further believe that the majority's reliance on its broad and descriptive definition of costs has led it to erroneously conclude that the fees of a section 604(b) evaluator qualify as costs under section 2-1009(a).

¶ 29       I would more strictly adhere to the *Vicencio* court's narrow and prescriptive definition of the term "costs," and I would conclude that the fees of a section 604(b) evaluator do not qualify as costs under section 2-1009(a). Again, the *Vicencio* court's definition was "charges or fees taxed by the court, such as filing fees, courthouse fees, and reporter fees." Other examples were subpoena fees and statutory witness fees. I do not believe that the fees of a section 604(b) evaluator fall under this definition. There are too many differences between the examples of court costs identified by the *Vicencio* court and a section 604(b) evaluator's fees to justify any attempt to squeeze section 604(b) fees within the term "costs." The list below, while not exhaustive, serves to highlight the numerous differences between court costs and section 604(b) fees.

¶ 30       First, most court costs are paid directly to the clerk of the court. This is true of filing fees, jury fees, appearance fees, and alias summons fees. When a court orders a party to pay a section 604(b) evaluator's fees, by contrast, the party pays those fees directly to the evaluator, who need not be "employed by the court on a regular basis." 750 ILCS 5/604(b) (West 2010). The section 604(b) evaluator in this case was an independently employed psychologist, who sent invoices for his services directly to the parties. As an attorney or other professional would, he sent periodic invoices, which likely itemized the services he had rendered during the preceding period.[3] While parties likewise pay statutory witness fees directly to witnesses, those witnesses typically do not send invoices for services rendered to the parties. Moreover, statutory witness fees compensate witnesses for time spent testifying in court or at a deposition. The fees paid to the section 604(b) evaluator in this case compensated him for conducting investigations and drafting reports outside of court, based on his special training and expertise.

¶ 31       Second, no judgment or court order is required for a party to incur court costs. A defendant pays an appearance fee because a statute requires it and the clerk of the court tells him or her to pay it. Similarly, attorneys voluntarily pay subpoena fees and statutory witness fees because they know they are required by statute to do so. Payment of the fees of a section 604(b) evaluator, by contrast, depends upon the court entering an order or a judgment

---

[3]The record reflects that Sheila issued two checks to Dr. Shapiro: one for $2,500 on November 2, 2010, which was approximately six weeks after Dr. Shapiro had been appointed, and one for $2,475 on March 22, 2011.

requiring payment of the fees. Section 604(b) provides that "[t]he court shall allocate the costs and fees of [a court-appointed custody evaluator] between the parties based upon the financial ability of each party and any other criteria the court considers appropriate." 750 ILCS 5/604(b) (West Supp. 2011). The parties have no obligation to pay a section 604(b) evaluator's fees or any idea of what their respective shares of the fees will be until a court appoints an evaluator and enters an order allocating the fees.

¶ 32 Third, court costs generally are fixed and are not subject to determinations of reasonableness. Court costs are set by statute or by rule. For example, section 27.2 of the Clerks of Court Act dictates the acceptable range for filing fees, appearance fees, jury fees, and alias summons fees, which may be increased by the county board only. 705 ILCS 105/27.2 (West 2010). Witness fees in a fixed amount are provided for in the Circuit Courts Act. 705 ILCS 35/4.3 (West 2010). The amount of fees that a section 604(b) evaluator generates, by contrast, will vary greatly depending upon the complexity of the custody issues involved and the amount of investigation necessary. Moreover, the fees of a section 604(b) evaluator are subject to a determination of reasonableness by the court following a hearing, which any party may request. 750 ILCS 5/604(b) (West Supp. 2011).

¶ 33 Fourth, court costs are not subject to allocation among the parties based upon financial ability to pay or upon any other criteria. For example, when a defendant files an appearance in a case, the defendant alone pays the appearance fee. When a court appoints a section 604(b) evaluator, by contrast, section 604(b) directs the court to "allocate the costs and fees of those professional personnel between the parties based upon the financial ability of each party and any other criteria the court considers appropriate." 750 ILCS 5/604(b) (West Supp. 2011). Here, when the court appointed Dr. Shapiro as the section 604(b) evaluator, it ordered the parties to share equally his fees. Although the order also stated that it was without prejudice as to the ultimate allocation, this further distinguishes the section 604(b) fees from court costs. Court costs are not subject to allocation between the parties at all, let alone an initial allocation followed by a final allocation.

¶ 34 Fifth, court costs are incurred regardless of the type of litigation involved. A defendant in a personal injury case pays the same appearance fee and the same jury fee as a defendant in a breach-of-contract action. By contrast, parties incur section 604(b) fees only during child custody litigation. Unlike court costs, section 604(b) fees are dependent upon the substantive issues raised in the litigation.

¶ 35 Sixth, court costs are incurred for generic administrative and court-funding reasons, not for specific merits-based or policy-based reasons. As the majority notes, the payment of court costs "provides modest recompense for citizens summoned by the court to give testimony and helps to defray the operational expenses of the court system (including the expense of compensating those called to serve as jurors)." *Supra* ¶ 6. The fees of a section 604(b) evaluator, by contrast, are incurred specifically to assist the court in resolving the merits of disputed child custody issues in the best interests of the children involved. In *In re Marriage of Petersen*, 319 Ill. App. 3d 325 (2001), a case decided before section 604(b) was amended to include a fee provision, the court noted that, "[i]n matters regarding child custody, courts have the inherent power to enter orders that are necessary for the benefit of the child, including orders assessing fees." *Petersen*, 319 Ill. App. 3d at 334. The court further

observed that the section 604(b) witness in the case, "although designated a court's witness, was appointed for the ultimate benefit of the minor children and was necessary to protect the interests of the minor children regarding issues of custody and visitation." *Petersen*, 319 Ill. App. 3d at 334. An order allocating section 604(b) fees between the parties does not "defray the operational expenses of the court system," it promotes the resolution of a custody proceeding on the merits and in the best interests of the children involved.

¶ 36    In sum, I would hold that the fees of a section 604(b) evaluator do not fall under the term "costs" in section 2-1009(a) of the Code. Because section 604(b) fees do not qualify as court costs, the only appropriate statutory basis that I can see for the allocation (or reallocation) of a section 604(b) evaluator's fees is section 604(b) itself. However, the trial court did not allocate the fees on this basis. Therefore, I would reverse the trial court's judgment. Although Sheila argues in her brief that the trial court had the authority under section 604(b) to reallocate Dr. Shapiro's fees entirely to Robert, as I noted above, the sole legal authority Sheila cited in her motion for reimbursement of costs was section 2-1009(a) of the Code. Therefore, the record does not support affirming the trial court on the basis that section 604(b) granted the court the authority to shift liability for the fees to Robert.

¶ 37    I find further support for my conclusion in the consideration that the cost provision of section 2-1009(a) is not meant to penalize a party who exercises his or her right to voluntarily dismiss an action prior to trial. Under its rule-making authority, our supreme court has granted trial courts authority to sanction parties who abuse the voluntary dismissal process. Illinois Supreme Court Rule 219(e) (eff. July 1, 2002) provides that "[a] party shall not be permitted to avoid compliance with discovery deadlines, orders or applicable rules by voluntarily dismissing a lawsuit." The rule further provides that, in the event of a party's abuse of the voluntary dismissal process, a trial court "may, *in addition to the assessment of costs*, require the party voluntarily dismissing a claim to pay an opposing party or parties reasonable expenses incurred in defending the action including but not limited to discovery expenses, expert witness fees, reproduction costs, travel expenses, postage, and phone charges." (Emphasis added.) Ill. S. Ct. R. 219(e) (eff. July 1, 2002). I believe that requiring a party who voluntarily dismisses a custody petition for legitimate and nonabusive reasons to bear the full cost of a section 604(b) evaluator is an unauthorized penalty, beyond the scope of what the legislature intended when it enacted section 2-1009(a).

¶ 38    Here, nothing in the record indicates that Robert's decision to cease pursuing his petition was intended to avoid or to abuse any discovery deadline, court order, or rule. Based on my reading of the record and of Dr. Shapiro's custody evaluation in particular, it appears that Robert made a rational decision not to proceed with his petition. In his evaluation, Dr. Shapiro–whom the court appointed on the recommendation of the guardian *ad litem*–reported that he had met with and interviewed Robert and Sheila, both individually and with their daughter, Francesca. Dr. Shapiro concluded that Francesca had a close and loving relationship with both of her parents, and that there was no reason to change residential custody. Dr. Shapiro concluded that a change in residential custody would not be in Francesca's best interests, but he also recommended that it would be in Francesca's best interests for Robert to have increased parenting time. Thus, while Dr. Shapiro's evaluation viewed Robert in a positive light, Dr. Shapiro's recommendations regarding custody

nevertheless made it extremely unlikely that Robert would prevail on his petition to modify custody. I do not believe that Robert should be penalized for voluntarily dismissing his petition (if that is what he did) in light of Dr. Shapiro's evaluation.