# Illinois Official Reports

## Supreme Court

*In re Marriage of Tiballi*, 2014 IL 116319

| | |
|---|---|
| Caption in Supreme Court: | *In re* MARRIAGE OF ROBERT N. TIBALLI, Appellant, and SHEILA J. ILAGAN TIBALLI, Appellee. |
| Docket No. | 116319 |
| Filed | March 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Fees of a professional evaluator in a custody matter should be allocated pursuant to the criteria provided by the statute under which he was appointed and are not court costs—order for one party to pay them as such held improper. |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Kane County, the Hon. Robert P. Pilmer, Judge, presiding. |
| Judgment | Judgments reversed and remanded with directions. |
| Counsel on Appeal | Timothy E. Weiler and Rory T. Weiler, of Weiler & Lengle, P.C., of St. Charles, for appellant.<br><br>Debra R. Antone, of Chicago, for appellee. |

Justices              JUSTICE THOMAS delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1      The circuit court of Kane County dissolved the marriage of Robert N. Tiballi and Sheila J. Ilagan Tiballi on September 27, 2005. The judgment of dissolution awarded the parties joint legal custody of their daughter Francesca, but placed residential custody of the child with Sheila. On January 6, 2010, Robert filed a petition to modify custody, requesting that he be designated as Francesca's residential custodian. The circuit court appointed a psychologist to advise it in connection with the custody dispute pursuant to section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (750 ILCS 5/604(b) (West 2010)). Upon Sheila's motion, the court dismissed the petition and ordered Robert to pay as court costs the fees of the court-appointed psychologist. The appellate court affirmed, rejecting Robert's argument that the psychologist's fees were not "costs" within the meaning of section 2-1009(a) of the Code of Civil Procedure (735 ILCS 5/2-1009(a) (West 2010)) that must be assessed to him. We allowed Robert's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). For the following reasons, we reverse the judgment of the appellate court and remand the cause to the circuit court for an allocation of the fees based solely on the criteria set forth in section 604(b) of the Marriage Act.

¶ 2                                    BACKGROUND

¶ 3      Robert's custody petition alleged, *inter alia*, that Sheila consistently attempted to "minimize and interfere with [Robert's] parental rights," refused to discuss parenting issues involving the child, interfered with planned trips and vacations he had scheduled with the child, and would not agree to afford Robert any "extra parenting time." The petition further alleged that Sheila was verbally and physically abusive toward Francesca and that the child had expressed a desire to reside with Robert. On February 11, 2010, Sheila filed a response, denying the allegations and additionally asking that Robert be sanctioned pursuant to Supreme Court Rule 137 for, among other things, alleging that she had abused the child, when Robert knew that allegation was false.

¶ 4      On March 8, 2010, Robert filed a motion requesting that a guardian *ad litem* (GAL) be appointed to represent Francesca. The circuit court granted the motion and appointed attorney Susan Lonergan as GAL. The court further ordered the parties to each pay one-half of Lonergan's initial retainer fee within 10 days.

¶ 5      On September 21, 2010, the court appointed Dr. Robert Shapiro to act as evaluator in the case and report his findings and recommendations to the court pursuant to section 604(b) of the Marriage Act. The parties were ordered to split the cost of the evaluation "without prejudice to ultimate allocation." The trial date of May 2, 2011, was rescheduled to September 13, 2011, to accommodate the time it would take Dr. Shapiro to complete his evaluation.

¶ 6        Dr. Shapiro's final report of his evaluation was filed with the court on June 13, 2011, which was Francesca's fourteenth birthday. Dr. Shapiro interviewed the parties and Francesca on numerous occasions over a six-month period, he also spoke with other sources and conducted psychological examinations of the parties. His report noted that Robert was 52 years old and Sheila was 48 years old; Francesca was the only child of either party. Despite the fact that the original dissolution order awarded a "somewhat minimal standard of visitation" to Robert—alternating weekends and one night a week (not overnight)—Robert and Francesca have nonetheless maintained an "extremely close" relationship, participating in numerous activities, taking trips and visiting with extended family. Sheila and Francesca also have a close and loving relationship.

¶ 7        The report found, however, that Sheila had not facilitated Francesca's relationship with her father. Sheila did not support extra time for father-daughter activities, but instead deferred to the initial custody decision made when Francesca was eight years old and refused to make any exceptions for extra time during visitation. Robert's claims that Sheila may have been physically or emotionally abusive were "not supported by the record." However, there was a level of tension that existed between Francesca and Sheila that did not exist between Francesca and Robert, possibly because Sheila and not Robert had the lion's share of the parental responsibilities. Sheila admitted that she and her daughter can have shouting matches and that both are very stubborn at times. The report also noted that Francesca's piano teacher from a few years previous said that she had observed some signs to make her think that Sheila had physically and verbally mistreated her daughter. But the report noted that there was no documentation that Francesca had ever been abused, and Francesca, herself, had never indicated that any such abuse occurred.

¶ 8        The report also noted that Robert had claimed that Francesca said she wanted to live with him, but the report found that Francesca denied this to the evaluator. However, the report further noted that Francesca had always been clear that she wanted to spend more time with her father. Robert's take was that he believed that after he filed the present custody petition, things had become calmer within Sheila's home. The report noted that this "may be true, but it is undocumented."

¶ 9        Finally, the report stated that Francesca was "warmly and positively attached to both of her parents" and was thriving under the current circumstances. Therefore, there did not appear to be a reason to change residential custody. The report further noted that given the mutually rich relationship cultivated between Francesca and Robert and Francesca's desire to spend more time with Robert, there was no reason why their time together should be so strictly limited as it currently was by the visitation schedule. The report concluded that it was in Francesca's best interest for Robert's parenting time to be increased. Accordingly, the report recommended specific increases to Robert's weekly visitation schedule as well as an increase in visitation for summer vacation.

¶ 10       After Dr. Shapiro's report was filed in June 2011, the next document appearing in the record is Sheila's October 27, 2011, motion to dismiss Robert's petition to modify custody. In her motion to dismiss, Sheila also sought to discharge the GAL. Her motion alleged that trial on Robert's petition was scheduled to begin on September 13, 2011, but that after Dr. Shapiro filed his custody evaluation recommending that there be no change in physical custody, Robert "advised through counsel that he was not going to proceed with his petition." Sheila further alleged that on September 12, 2011, Robert's attorney informed the court that trial would not proceed as scheduled. Sheila noted that no dispositive order was ever entered in the case.

¶ 11      On November 29, 2011, the circuit court entered an order granting Sheila's motion to dismiss. The order states that "[t]he matter is dismissed and taken off the call." It also states that the GAL is discharged, but does not mention costs. There is no report of proceedings of the hearing on Sheila's motion contained in the record before us.

¶ 12      On December 27, 2011, Robert filed a motion to vacate the court's November 29, 2011, order. He asked for an opportunity to be heard in connection with Sheila's motion to dismiss. Robert alleged that the parties' attorneys had reached an agreement as to the terms of a proposed order to be entered, but the order entered on November 29, 2011, did not conform to that agreement. Robert did not disclose the details of the proposed agreement in his motion to vacate. The court granted Robert's motion in part by modifying the dismissal order to provide that it was "without prejudice." The court also granted Sheila leave to file a petition for costs.

¶ 13      On January 31, 2012, Sheila filed a motion for costs. She alleged that during the litigation on Robert's custody petition she incurred and paid the following expenses: $4,975 to Dr. Shapiro for the section 604(b) custody evaluation; $2,596.25 to attorney Lonergan for the GAL fees; and $167.50 for photocopying.

¶ 14      On April 5, 2012, the court granted Sheila's motion for costs in part. The court ordered that Sheila be reimbursed $4,975 for the section 604(b) fees she paid to Dr. Shapiro. The court determined that the section 604(b) fee billed by Dr. Shapiro was a "court cost" under section 2-1009(a) of the Code. The court, however, denied reimbursement for the sums Sheila paid for the GAL and for photocopying. The court did not explain the incongruity in it essentially finding that the evaluator fees were "court costs" that must be taxed to Robert under section 2-1009(a), but the GAL fees were not.

¶ 15      Robert appealed, and the appellate court affirmed with one justice dissenting. 2013 IL App (2d) 120523. In her dissent, Justice Zenoff first questioned whether it was accurate to characterize the dismissal as a "voluntary dismissal" that triggered reference to section 2-1009(a), stating that "[t]o my knowledge, a party cannot 'voluntarily dismiss' an opposing party's action." *Id.* ¶ 21 (Zenoff, J., dissenting). The dissent then found that even if this was a dismissal under section 2-1009(a), the fees of a section 604(b) evaluator are not recoverable as costs under section 2-1009(a). *Id.* ¶ 23.

¶ 16                                       ANALYSIS

¶ 17                          I. Nature of the Dismissal Order

¶ 18      Before this court, Robert argues that the appellate court erred in ruling that fees incurred by a litigant for a custody evaluation under section 604(b) of the Marriage Act are recoverable as "costs" under section 2-1009(a) of the Code. As a preliminary matter, however, we first consider how to label the dismissal order in this case, *i.e.*, whether the dismissal of Robert's petition was a "voluntary dismissal" under section 2-1009(a). Section 2-1009(a) of the Code provides:

> "The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause." 735 ILCS 5/2-1009(a) (West 2010).

¶ 19      It has been held that three requirements must be met for a plaintiff to voluntarily dismiss his case without prejudice as of right: (1) the plaintiff must file a motion for voluntary dismissal prior to the beginning of trial; (2) the plaintiff must give proper notice; and (3) the

plaintiff must pay costs. See *Valdovinos v. Luna-Manalac Medical Center, Ltd.*, 328 Ill. App. 3d 255, 267 (2002). This court, however, has relaxed the requirements of notice and payment of costs where the defendant suffered no prejudice from the lack of notice and where the plaintiff agreed to pay the costs and the trial court's order provided for the plaintiff to pay the defendant's costs upon presentation. *Mizell v. Passo*, 147 Ill. 2d 420, 428 (1992).

¶ 20　　Here, Robert did not comply with any of the three requirements needed for a plaintiff to voluntarily dismiss his case. While the requirements of notice and payment of costs can be relaxed under the appropriate circumstances where there is no prejudice, Robert did not comply with the requirement that he actually file a motion to have his case voluntarily dismissed. We are not aware of any Illinois authority to support the notion that a plaintiff's cause may be voluntarily dismissed on the defendant's motion. Clearly, Robert never filed a motion to voluntarily dismiss his case. Instead, Robert's petition was dismissed on Sheila's motion, which advised the court that the September trial date set by the court had long passed, that Robert was not going to proceed with prosecuting his case and that no final order had been entered. Thus, it seems clear that Sheila's motion was one for dismissal based on want of prosecution. And it seems equally clear that the trial court granted the motion on that basis, as its April 29, 2011, order simply states that "Sheila's motion to dismiss is granted, the matter is dismissed and taken off the call."

¶ 21　　Although Robert later filed a motion to vacate the dismissal order, Robert's motion merely asserted that the order was "not in conformity with the agreement reached by counsel for the parties." Robert did not explain the content of that agreement and there is no transcript of the proceedings on the motion to vacate to indicate that the parties stipulated to voluntarily dismissing Robert's petition. *Cf.* Black's Law Dictionary 537 (9th ed. 2009) (defining "voluntary dismissal" as "[a] plaintiff's dismissal of a lawsuit at the plaintiff's own request or by stipulation of all the parties"). That the circuit court amended its earlier order to include the words "without prejudice" is of no import as both a voluntary dismissal and a dismissal for want of prosecution would be "without prejudice." See *Hudson v. City of Chicago*, 228 Ill. 2d 462, 483 (2008); *Dick Lashbrook Corp. v. Pinebrook Foundation, Inc.*, 134 Ill. App. 3d 56, 62 (1985) (dismissal for want of prosecution prior to trial is always without prejudice). The only notable exception to the rule that such dismissals before trial are without prejudice would be a voluntary dismissal pursuant to a settlement agreement, which would be *with* prejudice because a settlement agreement is final and binding upon the parties and acts as a bar to further proceedings. See *Figgie International, Inc. v. Department of Revenue*, 167 Ill. App. 3d 196, 202 (1988). Thus, we agree with the appellate court dissent that it is hard to characterize the trial court's dismissal order as being a voluntary dismissal under the circumstances presented by the record before us.

¶ 22　　We find, however, that it makes no practical difference here, as we still must reach the merits of the underlying "costs" issue regardless of whether the circuit court's order is characterized as a dismissal for want of prosecution rather than a "voluntary dismissal" under section 2-1009(a). This is because under either kind of dismissal, judgment must be awarded in favor of the defendant for his or her court "costs." See 735 ILCS 5/5-116 (West 2010) ("In all cases, where any action is voluntarily dismissed by the plaintiff or is dismissed for want of prosecution by reason that the plaintiff neglects to prosecute the same, the defendant shall recover judgment for his or her costs ***.") Obviously, the pivotal word "costs" appears in both section 2-1009 and section 5-116 and would need to be interpreted regardless of which of the two ways the dismissal is characterized. Thus, under either scenario—whether this was a

voluntary dismissal or a dismissal for want of prosecution—we must address the issue of whether Dr. Shapiro's fees were "costs" within the meaning of the costs statutes of the Code (735 ILCS 5/2-1009(a), 5-101 *et seq.* (West 2010)).

¶ 23                    II. Whether Section 604(b) Evaluator Fees Are Court Costs

¶ 24       Under the common law, a prevailing litigant is not entitled to recover from his opponent the costs and expenses of the litigation. *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157, 162 (1982). The recovery of costs is therefore completely dependent on statutory authorization, and only those items designated by statute to be allowable can be taxed as costs. *Id*. As noted above, Illinois does provide by statute that in all cases where any action is voluntarily dismissed by the plaintiff or is dismissed for want of prosecution, the defendant is entitled to recover costs. 735 ILCS 5/5-116 (West 2010). But the Illinois costs statutes (735 ILCS 5/5-101 *et seq.* (West 2010)) do not themselves provide a definition of "costs" or state what items of costs are intended. *Galowich*, 92 Ill. 2d at 162.

¶ 25       In *Vicencio v. Lincoln-Way Builders, Inc.*, 204 Ill. 2d 295, 301 (2003), this court considered the meaning of the term "costs." It began by noting the familiar rule that when construing a statute, the court should look first to the language of the statute, giving the terms their plain and ordinary meaning. But this court found that the plain and ordinary meaning of the term "costs" does "not enlighten us" and that it was a term of art that had acquired a fixed and technical meaning in the law. *Id*. This court also noted that statutes allowing the recovery of costs are in derogation of the common law and therefore must be narrowly construed. *Id*. at 300.

¶ 26       *Vicencio* interpreted the same term "costs" in section 5-108 of the Code (735 ILCS 5/5-108 (West 2010))—which is section 5-116's companion section and deals with the recovery of costs by plaintiffs—to mean " 'court costs,' such as filing fees, subpoena fees, and statutory witness fees." *Vicencio*, 204 Ill. 2d at 302. *Vicencio* referred approvingly to the Black's Law Dictionary definition of "court costs," as " 'charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees.' " *Id*. at 302 (quoting Black's Law Dictionary 350 (7th ed. 1999)). *Vicencio* then held that the fee of the treating physician that was at issue in the case before it was a "litigation cost," not a "court cost," and as such was not a cost that was mandated to be taxed by section 5-108. *Id*. This court also found that the fee of the treating physician could be taxed as a cost only if authorized by another statute or by supreme court rule. *Id*. The court then concluded that the various statutes and rules suggested by the plaintiff did not authorize the taxing of the fee as a cost. *Id*. at 311.

¶ 27       Applying *Vicencio*'s narrow definition of "costs," we hold that the fees of Dr. Shapiro as a section 604(b) evaluator do not qualify as "court costs" under sections 2-1009 and 5-116 of the Code. The fees of a section 604(b) evaluator clearly do not fall under the definition of "costs" adopted by this court, which again was "charges or fees taxed by the court, such as filing fees, courthouse fees, and reporter fees," as well as subpoena fees and statutory witness fees. We agree with the appellate court dissent that there are too many differences between the examples of court costs identified by *Vicencio* and the section 604(b) evaluator fees at issue here to justify squeezing the evaluator fees within the term "costs." See 2013 IL App (2d) 120523, ¶ 29 (Zenoff, J., dissenting). For example, in contrast to court costs, which are generally paid directly to the clerk of the court, section 604(b) evaluator fees are paid directly to the evaluator, who sends out invoices for his professional services directly to the parties. Furthermore, unlike evaluator fees, statutory witness fees are set by statute at $20 per day and $0.20 per mile for

- 6 -

travel (705 ILCS 35/4.3(a) (West 2012)), and the parties are not invoiced for any professional services (see *Irwin v. McMillan*, 322 Ill. App. 3d 861, 867-68 (2001)).

¶ 28 More importantly, we note that section 604(b) of the Marriage Act provides its own specific method for allocation of an evaluator's fees among the parties:

> "(b) The court may seek the advice of professional personnel, whether or not employed by the court on a regular basis. The advice given shall be in writing and made available by the court to counsel. Counsel may examine, as a witness, any professional personnel consulted by the court, designated as a court's witness. Professional personnel consulted by the court are subject to subpoena for the purposes of discovery, trial, or both. *The court shall allocate the costs and fees of those professional personnel between the parties based upon the financial ability of each party and any other criteria the court considers appropriate.* Upon the request of any party or upon the court's own motion, the court may conduct a hearing as to the reasonableness of those fees and costs." (Emphasis added.) 750 ILCS 5/604(b) (West 2012).

As the emphasized portion of the above-quoted statute indicates, it is the intent of the legislature that the court allocate the fees of the section 604(b) evaluator between the parties based on their respective abilities to pay and on any other criteria the court considers appropriate. By contrast, court costs are not subject to allocation among the parties based on the ability to pay and other criteria the court in its discretion finds appropriate. We find the allocation provision in section 604(b) to be a determinative feature that distinguishes the evaluator fees here from court costs.

¶ 29 Sheila argues that the lower court's decision should be affirmed to discourage parties from making unwarranted allegations that cause financial loss to the responding party. She also contends that the falsity of Robert's allegations should have been known to him at the time he filed his pleading. We find Sheila's argument unpersuasive. Supreme Court Rule 137 already provides a mechanism for sanctioning litigants who intentionally bring false allegations or file pleadings for an improper purpose, such as to harass or cause needless increase in the cost of litigation. Ill. S. Ct. R. 137 (eff. Feb. 1, 1994). Additionally, Supreme Court Rule 219(e) provides similar aid in the event of a party's abuse of the discovery process in connection with the voluntary dismissal process. Ill. S. Ct. R. 219(e) (eff. July 1, 2002).

¶ 30 We also note that Sheila did in fact request that Robert be sanctioned pursuant to Rule 137. But it does not appear that she pursued that request to a hearing before the circuit court. It also appears from our reading of Dr. Shapiro's report that Robert had a good-faith belief for making his allegations, but they ultimately turned out to be unfounded only after an intensive, months-long investigation by Dr. Shapiro. It also appears that Robert made a rational decision not to proceed with his petition after the report concluded that Francesca had a loving relationship with both parents and that a change in residential custody would not be in her best interests. We further note Dr. Shapiro's report viewed Robert favorably and recommended an increase to his parenting time.

¶ 31 In sum, we find that requiring a party who has his custody petition dismissed without prejudice for non-abusive reasons to automatically bear the full cost of a section 604(b) evaluator is beyond the scope of what the legislature intended when it enacted the costs statutes of the Code and section 604(b) of the Marriage Act. We hold that section 604(b) is the specific statute that controls the matter before us and that evaluator fees are not "court costs" within the meaning of sections 2-1009 or 5-116 of the Code. The only appropriate statutory basis, then, for allocation (or reallocation) of section 604(b) fees is section 604(b) itself.

¶ 32    Finally, we note that when the circuit court appointed Dr. Shapiro as the section 604(b) evaluator, it ordered the parties to share equally in his fees. The court was careful to further order that the cost of the evaluation was without prejudice to ultimate allocation. The court never made that ultimate allocation, however, because of its mistaken belief that section 2-1009 mandated the fees be taxed entirely to Robert as costs. We therefore remand the cause to the circuit court for reallocation of the fees based solely upon the criteria set forth in section 604(b).

¶ 33                                    CONCLUSION

¶ 34    For the foregoing reasons, we reverse the judgments of the circuit and appellate courts and remand the cause to the circuit court of Kane County for a hearing on the proper allocation of Dr. Shapiro's fees based upon the criteria set forth in section 604(b) of the Marriage Act.

¶ 35    Judgments reversed and remanded with directions.